**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 31 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

ZURICH REINSURANCE (LONDON)
LIMITED,

    Plaintiff-Appellee,

v.

JAMES CURTIS REMALEY,

    Defendant-Appellant,

and

WESTVILLE RIDING CLUB, INC.,

    Defendant.

No. 99-7101
(E.D. Okla.)
(D.Ct. No. 98-CV-594-S)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRORBY**, **KELLY,** and **MURPHY**, Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

_____

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant James Curtis Remaley appeals the district court's decision granting summary and declaratory judgment to Appellee Zurich Reinsurance (London) Limited (Zurich), based on its holding the insurance policy at issue does not provide liability coverage or a duty to defend the claims by Mr. Remaley against the Westville Riding Club, Inc. (Westville). We exercise jurisdiction under 28 U.S.C. §1291 and affirm.

A. Factual Background

We begin with a brief discussion of the undisputed facts from which this controversy arises. On July 16, 1998, Westville sponsored a rodeo competition which Mr. Remaley attended as a spectator. Scheduled events included calf roping, bull riding, saddle bronc, bareback, barrel racing and team roping. Another scheduled event, called "Money the Hard Way," involved the rodeo announcer inviting members of the general audience to voluntarily enter the rodeo arena and attempt to remove a ribbon from a bull's horn in order to win a $50 cash prize. Mr. Remaley was the only audience member who accepted the rodeo announcer's invitation to leave the stands and participate in "Money the Hard

Way." After Mr. Remaley entered the rodeo arena and attempted to remove the ribbon from the bull's horn, the bull "head butted" him, causing Mr. Remaley to sustain bodily injuries.

The issue before this court is whether Zurich is responsible under a general liability, commercial insurance policy with Westville to provide liability coverage and defend Westville on claims made by Mr. Remaley for his injuries. Specifically, we are asked to interpret an exclusionary endorsement contained in the insurance policy Westville purchased from Zurich. This exclusionary provision is entitled "EXCLUSION – ATHLETIC OR SPORTS PARTICIPANTS." It includes a "Schedule" that describes the operation on which general liability coverage exists as including: "Rodeos, including Products and/or Completed Operations." It also contains a statement on activities excluded from coverage:

> With respect to any operations shown in the Schedule, this insurance does not apply to "bodily injury" to any person while practicing for or *participating in any sports or athletic contest or exhibition* that [Westville] sponsor[s].

(Emphasis added.)

### B. Procedural Background

In an attempt to determine its rights and duties under the insurance policy,

-3-

Zurich filed a complaint seeking declaratory judgment. The parties eventually filed motions for summary judgment on the issue of coverage under the exclusionary provision at issue. The district court issued a well-reasoned decision granting summary and declaratory judgment in favor of Zurich. After applying Oklahoma law on the interpretation of insurance contracts and reviewing cases involving interpretation of same or similar exclusionary language, the district court determined the provision to be unambiguous and excluded coverage for Mr. Remaley's participation in "Money the Hard Way."

In applying a four-part analysis, the district court first determined "Money the Hard Way," constituted a "contest" because Mr. Remaley, and potentially others, competed to win $50 by removing the ribbon from the bull's horn.[1] Second, the district court determined "Money the Hard Way" constituted a contest of an "athletic or sports nature," because participants, who physically exerted themselves by attempting to remove the ribbon from the bull's horn, engaged in physical activity for the pleasure of the competition itself and the possibility of

---

[1] The district court held these circumstances sufficient to meet the dictionary definition of "contest" which means "a struggle for superiority or victory: competition." Webster's Ninth New Collegiate Dictionary at 283 (1986).

winning money.[2]  Third, the district court found it undisputed Westville sponsored the rodeo and made the decision to sponsor the event called "Money the Hard Way."  Finally, the district also found it undisputed Mr. Remaley received his injuries while participating in "Money the Hard Way."[3]  Based on these conclusions, the district court held the policy afforded no liability coverage to Westville for Mr. Remaley's claims, and therefore, Zurich owed no duty to defend Westville, pay any judgment entered against Westville, or make payments to anyone under the terms of the policy.

On appeal, Mr. Remaley suggests a plain reading of the exclusionary provision, based on common definitions, shows Mr. Remaley cannot be classified as a participant in a sports or athletic contest or exhibition.  Specifically, Mr. Remaley places great emphasis on the fact he is not a professional or trained athlete.  While Mr. Remaley relies on a "plain reading" of the exclusionary

---

[2]  The district court based this determination, in part, on the definition of "sport" as "a source of diversion:  recreation ... physical activity engaged in for pleasure." Webster's Ninth New Collegiate Dictionary at 1141 (1986).

[3]  In its decision, the district court also discussed cases on which Mr. Remaley relied, finding their holdings distinguishable because the injured parties were not "participants" in the principal contest or athletic event, unlike Mr. Remaley who participated in an event regularly scheduled as part of the rodeo and which took place in the rodeo arena.

-5-

provision, he also contends the endorsement is ambiguous, requiring an interpretation against Zurich as the insurer.  Finally, Mr. Remaley suggests the district court's interpretation of the exclusionary provision is contrary to public policy because it holds the spectator to the same standard as an active participant.[4]

## C. Standard of Review

We review a grant of summary judgment *de novo*.  *West Am. Ins. Co. v. AV & S*, 145 F.3d 1224, 1227 (10th Cir. 1998).  Because this is a diversity case and the accident occurred in Oklahoma, we apply the forum state's choice of law.  *Id.* Under Oklahoma law, an insurance policy is liberally construed, consistent with the object to be accomplished.  *See Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991).  The Oklahoma courts have stated:

> The construction of an insurance policy should be a natural and reasonable one, fairly constructed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result.
>
> The terms of the parties' contract, if unambiguous, clear and

---

[4] In addition, Mr. Remaley suggests Zurich is legally obligated to pay damages in the event we reverse the district court's decision and determine the exclusionary provision does not apply.  Given our affirmation of the district court's decision, we need not address this issue.  Moreover, we note this issue is outside the issues presented to, and ruled on by, the district court in its decision on summary judgment.

consistent are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated.

*Id.* (quotation marks and citations omitted).

## D. Discussion

Proceeding with these standards in mind, and based on our independent review of the insurance policy's exclusionary provision and the record, we hold the policy excludes coverage to Westville for Mr. Remaley's injuries. First, we hold the terms in the provision are of common usage and, if read in their plain and ordinary sense, are not ambiguous. Our determination comports with the majority of cases interpreting the same or almost identical exclusionary language,[5] and with the interpretation of Westville officials.[6] It also comports with the intended object of the insurance policy, as evidenced by the testimony of a

---

[5] In interpreting the same or similar exclusionary provision, a majority of the courts either explicitly or implicitly determined the terms contained within the provision were unambiguous, regardless of the courts' ultimate application of the provision and holding. *See* 35 A.L.R.5th 731 (1996 ed. & 1999 Supp.) (citing fourteen cases involving the same or similar provision); *see also Benton County Agric. Soc'y v. St. Paul Surplus Lines Ins. Co.*, 372 N.W.2d 383, 384 (Minn. Ct. App. 1985) (same or similar provision). *But see Clermont Cent. Soccer Ass'n v. Cincinnati Ins. Co.*, 676 N.E.2d 1281, 1282 (Ohio Misc. 1995) (finding word "participant" ambiguous); *Zoller v. State Bd. of Educ.*, 278 So.2d 868, 870 (La. App. 1973) (finding word "practicing" ambiguous).

[6] These officials admitted "Money the Hard Way" constituted a rodeo event and a contest or sporting event.

Westville official who admitted Zurich issued the policy for the purpose of covering injuries to spectators, not participants. Given Zurich did not intend to cover injuries sustained from calf roping, bull riding, saddle bronc, bareback, barrel racing and team roping, an extension of coverage for injuries received from chasing a bull in the same arena would produce an unintended, if not absurd, interpretation of the exclusionary provision.

As to the application of the exclusionary provision to the circumstances in this case, the district courts clearly explained, in its four-part analysis, why Mr. Remaley qualified as a participant in a sport or athletic contest. We agree with its analysis and decline to duplicate it here. Finally, the district court's interpretation of the provision is not contrary to public policy. Mr. Remaley incorrectly contends the district court is holding him, as a spectator, to the same standard as an active participant. However, when Mr. Remaley entered the arena for "Money the Hard Way," his status changed from spectator to an active participant. Thus, he is merely being held to the same standard as other participants, and not to the standard of those who elected to remain passively outside the arena or seated in the stands. While we are sympathetic Mr. Remaley received injury, his remedy, if any, does not lie with Zurich.

For these, and substantially the same reasons articulated in the district court's July 22, 1999 Order, we **AFFIRM** summary and declaratory judgment in favor of Zurich.


**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge