Bradford Dana LYNCH, as Parent and Natural Guardian of Minor Plaintiff Ian Brian LYNCH, and Bradford Dana Lynch, Individually, Respondent,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Petitioner, Appellant.

No. C9–99–2102.

Supreme Court of Minnesota.

May 24, 2001.

William M. Hart, Katherine A. McBride, Meagher & Geer, P.L.L.P., Minneapolis, for appellant.

Sharon L. Van Dyck, Robert J. Schmitz, Schwebel, Goetz & Sieben, P.A., Minneapolis, for respondent.

## OPINION

RUSSELL A. ANDERSON, Justice.

Bradford Lynch, individually and as parent and natural guardian of Ian Lynch, brought this action to collect underinsured motorist (UIM) benefits under an automobile insurance policy issued to him by appellant American Family Mutual Insurance Company. The district court granted summary judgment for American Family, ruling that while the insurance policy does not exclude UIM benefits in this case, Lynch improperly seeks to convert UIM benefits into liability benefits. The court of appeals reversed, holding that the terms of the American Family policy permit recovery of UIM benefits and that no improper conversion of UIM benefits into liability benefits would occur. We now affirm but on different grounds, holding that Lynch seeks benefits that in effect convert UIM coverage into liability coverage, but that the Minnesota No–Fault Automobile Insurance Act (No–Fault Act) does not prohibit this coverage conversion and thus the explicit terms of the American Family policy that permit UIM benefits in these circumstances are valid.

Kathleen Lynch borrowed a van from her neighbor, Lori Coleman, and while driving lost control and collided with an oncoming vehicle driven by Sandra Vogt. Ian Lynch, Kathleen Lynch's son, was a passenger in the van and was severely injured in the accident.

Coleman insured the van with a policy issued by Western National Mutual Insurance Company. The policy contained a $100,000 per person limit on liability coverage for bodily injury and a $100,000 per person limit on UIM coverage. Both Kathleen and Ian Lynch were "insured persons" under two automobile policies that American Family issued to Bradford Lynch, Kathleen Lynch's husband. The American Family policies contained a $100,000 per person limit on liability coverage for bodily injury and a $100,000 per person limit on UIM coverage for bodily injury.

Ian brought a negligence action against Kathleen Lynch, Vogt, Coleman, and Gold Key Leasing, which leased the van to Coleman. The parties proceeded to voluntary binding arbitration on the issue of liability only and an arbitration panel found that Kathleen Lynch was solely liable for the accident. Gold Key was dismissed from the suit on the grounds that it had no liability under its lease with Coleman. Both Western National and American Family paid their liability limits of $100,000, but Ian's damages from the accident exceeded $200,000. The Western National policy excludes from its definition of underinsured motor vehicle any vehicle owned by or available for the regular use of the insured. Because the van fell within this "owned-vehicle" exclusion, UIM benefits were not available to the Lynches under the Western National policy. The Lynches then sought and were denied UIM benefits under their own policy with American Family.

The American Family policy provides the following in its UIM coverage endorsement:

We will pay compensatory damages for bodily injury to an insured person who is legally entitled to recover from the owner of [sic] operator of an underinsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the underinsured motor vehicle.

The policy further provides that "[i]nsured person means: * * * [y]ou or a relative" and defines an underinsured motor vehicle as "a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits less than the limits of liability of this Underinsured Motorist Coverage."[1] Like the Western National policy, the American Family policy contains a standard "owned-vehicle" exclusion that excludes from the definition of "underinsured motor vehicle" any vehicle "[o]wned by or furnished or available for the regular use of you or any resident of your household." Because the van was not owned by or available for the regular use of the Lynches, the American Family owned-vehicle exclusion does not prevent UIM coverage here. American Family does not dispute that the policy by its terms allows Ian Lynch to recover UIM benefits for damages he suffered as a consequence of the accident.

American Family nevertheless denied UIM coverage on the basis that payment of UIM benefits would convert the UIM coverage into liability coverage, because

1. The American Family policy's "less-than-limits" definition differs from the No–Fault Act language that defines an underinsured motor vehicle as "a motor vehicle or motorcycle to which a bodily injury liability policy applies at the time of the accident but its limit for bodily injury liability is less than the amount needed to compensate the insured for actual damages." Minn.Stat. § 65B.43, subd. 17 (2000). Because American Family does not rely on its less-than-limits definition in this case, we need not address whether the policy can validly differ from the statutory language in this manner.

the UIM benefits would compensate the Lynches for damages caused by Kathleen Lynch's negligence, for which American Family had already paid liability benefits. Relying on a series of cases from this court, American Family argued that such coverage conversion is prohibited by the No–Fault Act and therefore UIM coverage was not available to the Lynches despite the language of the policy to the contrary.

Bradford Lynch then brought this action to compel American Family to pay UIM benefits. On cross-motions for summary judgment, the district court ruled for American Family on the grounds that Lynch's claim for UIM benefits was in reality a claim for additional liability coverage and would therefore impermissibly convert less expensive UIM coverage to more expensive liability coverage.

The court of appeals reversed, concluding that there was no prohibited coverage conversion in these circumstances. The court reasoned that the Lynches seek UIM benefits from the American Family policy not based on the underinsured status of Kathleen Lynch, the driver, but based on the underinsured status of the borrowed van. In other words, it was the failure of the owner of the van to purchase adequate liability insurance that gives rise to the UIM claim and there is therefore no impermissible coverage conversion.

We granted review because this case presents two aspects of the coverage conversion issue not addressed in our previous cases. First, would payment of UIM benefits by American Family in the circumstances of this case result in the conversion of the UIM coverage into liability coverage? Second, if the answer to the first question is yes, does the No–Fault Act prohibit that coverage conversion so that UIM coverage is precluded even though the terms of the insurance policy

provide for coverage in these circumstances?

■ In an appeal from a summary judgment where there are no genuine issues of material fact, the reviewing court determines whether the lower court erred in its application of the law. *Scheibel v. Ill. Farmers Ins. Co.*, 615 N.W.2d 34, 36–37 (Minn.2000). The issues presented on appeal are legal, and therefore subject to de novo review. *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998).

■ A basic precept of insurance contract law is that the extent of the insurer's liability is governed by the contract into which it entered as long as the policy does not omit coverage required by law and does not violate applicable statutes. *Am. Family Mut. Ins. Co. v. Ryan*, 330 N.W.2d 113, 115 (Minn.1983); *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). Neither party argues that the American Family policy omits coverage required by law. Moreover, American Family concedes that its UIM endorsement provides coverage in these circumstances. Accordingly, American Family can deny UIM coverage only if we determine that providing coverage violates the No–Fault Act.

American Family argues that to enforce the UIM endorsement as written would result in coverage conversion that does violate the No–Fault Act. As noted, we must first determine if there is coverage conversion in this situation and, if so, decide whether it is prohibited by the Act. Before addressing those questions, a review of our cases concerning coverage conversion will be helpful.

We first addressed the concept of coverage conversion in *Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288 (Minn.1983). *Myers* involved a UIM claim by heirs of a passenger killed in a single-car accident. The trustee for the heirs

collected $25,000 in liability coverage from the negligent driver's insurer and $25,000 from the car owner's liability insurer, State Farm, and then sought further payment based on the underinsured motorist coverage provided in the State Farm policy.[2] *Id.* at 289. The policy, however, excluded from the definition of "underinsured motor vehicle" any vehicle owned by or available for the regular use of the insured or any family member. *Id.* at 290. Because the named insured owned the car in which Myers was killed, State Farm asserted that this owned-vehicle exclusion precluded UIM benefits. *Id.* The heirs argued that the owned-vehicle exclusion was invalid as contrary to the No–Fault Act because it barred UIM benefits mandated by the Act. *Id.* at 291.

We held that the owned-vehicle exclusion did not violate the No–Fault Act and could validly be applied to bar UIM coverage, because the effect of the exclusion was to prevent a conversion of UIM coverage into liability coverage not contemplated by the Act. We explained:

> Underinsured motorist coverage is first-party coverage and, in that sense, the coverage follows the person not the vehicle. Here, however, the decedent passenger's heirs have already collected under the liability coverage of the insurer of the Stein car. To now collect further under the same insurer's underinsured motorist coverage would be to convert the underinsured motorist coverage into third-party insurance, treating it essentially the same as third-party liability coverage. The policy definition * * * properly prevents this conversion of first-party coverage into third-party coverage.

*Id.* at 291.

We next addressed the UIM-to-liability coverage conversion issue in *Meyer v. Ill.*

*Farmers Ins. Group,* 371 N.W.2d 535 (Minn.1985). Meyer was injured in a single-car accident in which she was a passenger and her husband the driver. *Id.* at 536. Although she received the full liability limits from the vehicle's insurer, because she was not fully compensated for her injuries, Meyer also sought underinsured motorist benefits from the insurer. *Id.* The policy contained no provision for UIM coverage, but because the insurer had not made the mandatory offer of UIM coverage then required by the No–Fault Act, UIM coverage was implied as a matter of law under Minn.Stat. § 65B.49, subd. 6(e) (1974). *Meyer,* 371 N.W.2d at 536.

We held that UIM coverage would not be imposed in a one-vehicle accident under the same policy that insured the vehicle for liability coverage because:

> [t]he statute at issue requires that underinsured coverage be offered to compensate damages that are uncompensated because they exceed "the residual bodily injury liability limit of the owner of the *other vehicle*." From this language, it is apparent that the statute contemplates that a vehicle upon which underinsured benefits are to be paid is not to be the same vehicle that sets the limits of liability coverage.

*Id.* (emphasis in original) (quoting Minn. Stat. § 65B.49, subd. 6(e)). The court pointed out that its interpretation of the "other vehicle" limitation in UIM coverage was "consistent with the position and purpose of underinsurance in the general scheme of insurance coverage." *Id.* at 537. The court explained that UIM and liability coverage are intended to insure different risks and that

**2.** The decedent passenger owned no vehicle and the heirs therefore could not look to the

decedent's own insurer for UIM coverage. *Myers,* 336 N.W.2d at 291.

[a]n insured wishing to provide greater protection from his own negligence for himself and his passengers should purchase additional liability insurance coverage; allowing underinsured coverage in the instant case would, in essence, be allowing an individual to increase liability coverage by purchasing less expensive underinsured coverage.

*Id.* We noted that this was the same concern we expressed in *Myers* in upholding the validity of the owned-vehicle exclusion. *Id.*

We again confronted the relationship between an owned-vehicle exclusion and coverage conversion in *Petrich v. Hartford Fire Ins. Co.*, 427 N.W.2d 244 (Minn.1988). Paul Petrich was injured in a single-vehicle accident while occupying an uninsured vehicle owned by his stepfather. *Id.* at 245. Petrich sought benefits under the uninsured motorist coverage in a policy on two other vehicles owned by the stepfather. *Id.* at 245. The insurer denied coverage based on an owned-vehicle exclusion. *Id.* This court upheld the application of the exclusion in those circumstances, relying on the rationale of *Myers* that an insurer can exclude first-party coverage where it would be used to substitute for more expensive liability protection. *Id.* We stated that "*Myers* * * * rests on the principle that vehicle owners may not purchase first party coverage and expect it to function as liability protection. The concern is * * * the conversion of one type of insurance into another." *Id.* at 246.

The issue came before us again in *Thommen v. Ill. Farmers Ins. Co.*, 437 N.W.2d 651 (Minn.1989), after the legislature had amended the No–Fault Act UM/ UIM provisions in 1985.[3] *Thommen* involved a dispute between Thommen's insurer and the insurer of the vehicle in which Thommen was injured, American Family Insurance Group, about which insurer was responsible for UIM coverage for Thommen's injuries. *Id.* at 653. The court acknowledged that the 1985 amendments reflected a preference for the insurer of the occupied vehicle as the first source of UIM coverage, but the American Family policy contained an owned-vehicle exclusion that would bar UIM coverage if it was valid and enforceable. *Id.* at 653– 54. We concluded that the statutory changes were not intended to change "the fundamental character of UIM coverage," and that the rationale of *Myers* remained valid, reiterating that "to hold the insurer liable to pay damages resulting from the negligent use of the insured motor vehicle pursuant to both the liability coverage and the UIM coverage is to convert the first-party UIM coverage into third-party insurance, 'treating it essentially the same as third-party liability coverage.'" *Thommen*, 437 N.W.2d at 654 (quoting *Myers*, 336 N.W.2d at 291).

Appellant American Family contends that these cases established a fundamental principle inherent in the No–Fault Act's concept of UIM coverage that precludes UIM-to-liability coverage conversion even if the policy terms would otherwise allow it. Lynch counters that there is no coverage conversion here, and even if there were, this court's decisions establish only that policy language may prevent coverage conversion, but not that it is prohibited by the No–Fault Act.

---

**3.** As the court noted, the significant changes to UIM coverage involved eliminating the calculation of UIM benefits on an "add-on" basis and precluding the stacking of UIM coverage. *Thommen*, 437 N.W.2d at 654. The "other vehicle" language in the definition of underinsured motorist coverage relied on *Myers* also was eliminated. Act of Apr. 11, 2980, ch. 539, § 7, 1980 Minn. Laws 700, 702.

We first address whether providing UIM coverage from the American Family policy would result in the kind of coverage conversion discussed in *Myers* and its progeny. We explained in those cases that liability and UIM coverage protect the insured against different types of risks. Liability insurance is third-party coverage, meaning that it pays for damage the insured is legally obligated to pay another person, a third party, for bodily injury arising out of the insured's ownership, maintenance or use of a motor vehicle. *Myers*, 336 N.W.2d at 291; Minn.Stat. § 65B.49, subd. 3(2) (2000). UIM coverage, by contrast, is first-party coverage, meaning that it compensates an insured under his own policy if he is legally entitled to recover damages from the owner or operator of an underinsured motor vehicle. *Myers*, 336 N.W.2d at 291; Minn.Stat. § 65B.43, subd. 19 (2000). Thus, third-party coverage protects an insured from having to pay damages when the *insured's* negligence causes injury to others, while first-party coverage protects an insured when someone else's negligence causes injury to the insured and the tortfeasor has insufficient liability coverage. *Meyer*, 371 N.W.2d at 537 ("Liability insurance is purchased by an owner of a vehicle to protect passengers in that vehicle [and others] from the negligent driving of the owner or another driving the vehicle. Underinsured coverage * * * is intended to protect against * * * the risk that a negligent driver of another vehicle will have failed to purchase adequate liability insurance * * *.").

Here, all injuries to Ian Lynch arising from this accident were caused by Kathleen Lynch's negligent driving. American Family has paid the maximum liability benefits provided by the Lynch policy for Kathleen Lynch's negligence. In these circumstances, paying UIM benefits from the same policy results in paying additional benefits for the injuries caused by the negligence of the insured, Kathleen Lynch. That is the essence of liability coverage.

The court of appeals concluded there is no coverage conversion here because the UIM coverage would be based not on the inadequacy of Kathleen Lynch's liability insurance under the American Family policy, but on the inadequacy of the liability coverage on the van under the Western National policy. The fact that the underinsured vehicle in this case, the Coleman van, was not insured by American Family does not change the fact that Kathleen Lynch's negligence was the exclusive cause of damages. The Coleman vehicle's liability coverage, in this instance for a permissive driver, was triggered exclusively by Kathleen Lynch's negligence. In terms of coverage conversion analysis, it makes no difference whether Kathleen Lynch was driving a nonowned or an owned vehicle. Bradford Lynch seeks to recover UIM benefits from a policy that already paid liability benefits for the same negligent act. As we said in *Myers*, "[t]o now collect further under the same insurer's underinsured motorist coverage would be to convert the underinsured motorist coverage into third-party insurance, treating it essentially the same as third-party liability coverage." 336 N.W.2d at 291. *See also Thommen*, 437 N.W.2d at 654 ("[T]o hold the insurer liable to pay damages resulting from the negligent use of the insured motor vehicle pursuant to both the liability coverage and the UIM coverage is to convert the first-party UIM coverage into third-party insurance * * *.").

We explained in *Meyer* that "[a]n insured wishing to provide greater protection from his own negligence for himself and his passengers should purchase additional liability insurance coverage; allowing underinsured coverage in the instant case would, in essence, be allowing an indi-

vidual to increase liability coverage by purchasing less expensive underinsured coverage." 371 N.W.2d at 537. Even though there are two liability policies involved here, one for the vehicle owner and one for the negligent driver, providing UIM benefits based on the negligence of the driver whose policy already paid liability coverage would have precisely the impact described in *Meyer*. We therefore conclude that providing UIM coverage in these circumstances constitutes coverage conversion.

■ Having decided that payment of UIM benefits would result in coverage conversion, we must address whether the No–Fault Act impliedly prohibits that coverage conversion. American Family argues that the series of cases discussed above establishes that coverage conversion is contrary to the principles of the No–Fault Act and therefore cannot be permitted, even where the terms of the insurance policy would provide UIM coverage.

In three of the four cases, *Myers, Petrich* and *Thommen*, the issue was whether an owned-vehicle exclusion could be enforced by the insurer to defeat UIM or UM coverage.[1] *Myers,* 336 N.W.2d at 291; *Petrich,* 427 N.W.2d at 245; *Thommen,* 437 N.W.2d at 653. As discussed above, we concluded that the exclusions did not conflict with the requirements of the No–Fault Act because their effect was not to deny required UIM benefits, but rather to prevent the use of UIM coverage as a substitute for liability coverage, that is, coverage conversion. In essence, we decided that because the UIM coverage mandated by the Act is not intended to serve as a supplement for the insured's inadequate liability coverage, an insurer can

write and enforce an exclusion that precludes that coverage conversion.

In *Meyer* there was no owned-vehicle exclusion because the coverage was implied under the statute. 371 N.W.2d at 536. The issue, then, was what is the minimum UIM coverage required by the No–Fault Act. We held that the "other vehicle" language in the statutory definition of UIM coverage precluded payment of both liability and UIM coverage from the same policy. 371 N.W.2d at 537. We also noted that the reasoning of *Myers* that UIM coverage is not meant as a substitute for the insured's liability coverage supported that interpretation of the Act. 371 N.W.2d at 537.

We do not read our discussion of coverage conversion in these cases as interpreting the No–Fault Act to prohibit coverage conversion, especially given that there is no language in the Act to that effect. Rather, we discerned that the concept of UIM coverage *required* by the Act does not include the provision of UIM benefits when the effect is to convert the UIM coverage into third-party liability coverage. Consequently, we held that an insurer may permissibly preclude such coverage conversion with an owned-vehicle exclusion and that UIM coverage will not be implied as a matter of law where it would result in coverage conversion.

■ There is, nevertheless, nothing in the No–Fault Act or in our decisions concerning coverage conversion that prohibits an insurer from writing UIM coverage that allows conversion. Here, unlike *Myers, Petrich* and *Thommen,* the owned-vehicle exclusion does not prevent UIM coverage. Unlike *Meyer,* where the policy did not include UIM coverage and the

---

4. *Petrich* involved a claim for UM coverage. For convenience, we will refer only to UIM

coverage in the balance of this discussion.

minimum requirement was therefore implied, here there is an express coverage clause providing UIM coverage that, in these circumstances, is broader than the UIM coverage required by statute. The American Family policy may provide more coverage than required by the Act. The No–Fault Act explicitly provides that parties to an automobile insurance contract may agree to more benefits and coverage than the minimum required by the Act. Minn.Stat. § 65B.49, subd. 7 (2000).

■ American Family contends that allowing first-party UIM benefits to function as third-party liability benefits would undermine the coordinated scheme of automobile insurance created by the No–Fault Act and would thus violate legislative intent. We are not convinced that an insurance policy that permits coverage conversion so undermines the system that it is implicitly prohibited by the Act. If the policy provides the coverage required under the No–Fault Act, the policy can hardly be said to undermine the intent of the No–Fault Act. The American Family policy provides both the liability and UIM benefits required by law. Although we recognized in *Meyer* that coverage conversion can be detrimental to the interests of insurers, our cases stand for the proposition that insurers can protect themselves against that effect in the terms of their policies. Where the policy language does not provide that protection, we will not read it into the policy as a requirement of the No–Fault Act.

In conclusion, Bradford Lynch seeks UIM benefits from his American Family policy that in effect convert first-party UIM coverage into third-party liability coverage. Nonetheless, because the American Family policy unambiguously allows recovery of UIM benefits in these circumstances and the No–Fault Act does not explicitly or impliedly prohibit parties

to an automobile insurance contract from agreeing to terms that allow coverage conversion, Lynch is entitled to his UIM benefits under the American Family policy.

Affirmed.

GILBERT, Justice (concurring specially).

### SPECIAL CONCURRENCE

I concur with the result reached by the majority based on the plain language of the policy and the fact that the No–Fault Act does not prohibit this type of coverage. That is where I would end the analysis.