Marcia A. KELLY, Petitioner,
Appellant,

v.

STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPANY,
Respondent.

No. C0–02–217.

Supreme Court of Minnesota.

July 31, 2003.

Emmett D. Dowdal, Dowdal Law Office, White Bear Lake, MN, for Appellant.

Katherine A. McBride, John C. Hughes, Meagher & Geer, P.L.L.P., Minneapolis, MN, for Respondent.

Michael C. Snyder, Pamela J. Spaulding, Meshbesher & Spence, Ltd., Minneapolis, MN, for Amicus Curiae Minnesota Trial Lawyers Association.

## OPINION

PAGE, Justice.

This appeal arises out of cross-motions for partial summary judgment regarding appellant Marcia Kelly's ability to obtain underinsured motorist (UIM) benefits from respondent State Farm Mutual Automobile Insurance Company (State Farm). As the relevant facts are undisputed, the sole issue before us is whether the exclusion in State Farm's policy, which would preclude Kelly's claim for UIM benefits, contravenes Minnesota case law and the language of the Minnesota No–Fault Act, Minn.Stat. §§ 65B.41–.71 (2002).

On September 19, 1998, Kelly's husband was driving his Dodge Intrepid and negligently caused an accident with an unoccupied motor vehicle injuring Kelly, who was a passenger in the Intrepid. At the time of the accident, Kelly's husband was the sole owner of the Intrepid, which was insured by State Farm. In addition, both Kelly and her husband were listed as owners of a Pontiac Grand Am, which was also insured by State Farm, but under a separate policy. While Kelly and her husband had separate policies for the Intrepid and the Grand Am, they were both listed as named insureds on each policy.

As a result of the accident, Kelly brought a damage claim against her husband, which State Farm settled by paying Kelly $100,000, the liability limit on the Intrepid. Because her damages exceeded this amount, Kelly filed a claim with State Farm for UIM benefits under the Grand Am policy. State Farm denied her UIM claim contending that under the Grand Am policy the Intrepid was not an "underinsured motor vehicle" and that allowing Kelly to recover UIM benefits under the Grand Am policy, which also provided liability coverage to her husband, the tortfeasor, would result in coverage conversion because the UIM policy would be used to supplement her husband's inadequate liability insurance.

Based on State Farm's denial of her UIM claim, Kelly commenced the instant lawsuit. Ultimately, both parties filed cross-motions for partial summary judgment to resolve the UIM coverage dispute. The district court initially granted Kelly's motion and denied State Farm's based on its conclusion that Kelly was entitled to UIM coverage under the Grand Am policy because Kelly had no ownership interest in the Intrepid and because it did not appear that Kelly was working with her husband to convert her UIM coverage to additional liability coverage for him.

Approximately one month after the district court ruled, the court of appeals decided *Johnson v. St. Paul Guardian Insurance Co.*, 627 N.W.2d 731 (Minn.App.), *rev. denied* (Minn. Sept. 11, 2001). In *Johnson*, the court of appeals held that an injured individual, whose injuries exceeded the tortfeasor's liability coverage, could not look to a separate policy providing UIM coverage for the tortfeasor because this would result in impermissibly converting that UIM coverage into more expensive liability coverage to make up for the tortfeasor's inadequate liability coverage. *Id.* at 733–34. As a result of *Johnson*,

State Farm moved the district court to reconsider the grant of partial summary judgment in favor of Kelly. On December 17, 2001, the district court reversed its earlier order and entered judgment in favor of State Farm, finding that under *Johnson* Kelly was not entitled to UIM benefits because her husband was listed as an insured on the Grand Am policy. In an unpublished opinion, the court of appeals affirmed, concluding that an injured individual could not claim benefits under a tortfeasor's liability policy as well as benefits under a separate UIM policy owned by the tortfeasor because it would result in an impermissible coverage conversion. *Kelly v. State Farm Mut. Auto. Ins. Co.*, No. C0–02–217, 2002 WL 1837992, at *3 (Minn. App. Aug. 13, 2002). We granted Kelly's petition for further review and now affirm.

■ On appeal from a grant of summary judgment when there are no disputed issues of material fact, we review de novo whether the lower court erred in its application of the law. *Lynch v. Am. Family Mut. Ins. Co.*, 626 N.W.2d 182, 185 (Minn.2001); *Am. Nat'l Prop. & Cas. Co. v. Loren*, 597 N.W.2d 291, 292 (Minn.1999) (stating that interpretation of an insurance contract and the construction of the statutes that govern it are questions of law).

■ Under the Grand Am policy,[1] State Farm agreed to pay all damages resulting from bodily injury to an insured that the insured is entitled to collect from the driver of an underinsured motor vehicle. The policy defines an "underinsured motor vehicle" as one whose liability limit is less than the amount needed to compensate the insured for his or her damages as long as the at-fault vehicle is not "furnished for the regular use of you, your spouse or any relative." Here, the at-fault vehicle, the Intrepid, was owned and regularly used by Kelly's husband, a named insured on the Grand Am policy, and it is on that basis State Farm denied Kelly's UIM claim.

Kelly argues that this court should conclude that she is entitled to coverage under the Grand Am policy because the policy exclusion contravenes the underlying purpose of the No–Fault Act and this court's decision in *American Motorist Ins. Co. v. Sarvela*, 327 N.W.2d 77, 79 (Minn.1982) (invalidating a policy exclusion that precluded recovery of UIM benefits for which the insured paid a premium and concluding that policy exclusions attempting to prevent UIM coverage from following the person are inconsistent with the Minnesota No–Fault Act). She maintains that her UIM claim should not be denied merely because her husband was listed as an insured on the Grand Am policy and contends that the decision to place a family member's name on the insurance policy or the title to the automobile is often made by the insurance agent or made for purposes other than insurance and therefore should not be the basis upon which a UIM claim may be denied.

State Farm contends that exclusions such as the one contained in the Grand Am policy are appropriate and consistent with Minnesota law. State Farm argues that to allow Kelly to recover underinsured motorist benefits under the Grand Am policy would permit the conversion of less expensive underinsured motorist coverage (first-party insurance) into more expensive lia-

---

1. Under the Intrepid policy, the Intrepid is excluded from the definition of an "underinsured motor vehicle" for purposes of obtaining UIM benefits. We have upheld this exclusion as proper and consistent with the purposes of the No–Fault Act. *See Meyer v. Ill. Farmers Ins. Group*, 371 N.W.2d 535, 537 (Minn.1985) (holding that an injured individual cannot obtain both liability coverage and underinsured motorist coverage from the same policy). Kelly does not challenge that exclusion.

bility coverage (third-party insurance) in a situation in which the insured under the Grand Am policy had the ability to purchase liability coverage in a higher amount for the Intrepid. State Farm contends that to allow such a conversion would be inconsistent with this court's decision in *Petrich v. Hartford Fire Ins. Co.*, 427 N.W.2d 244 (Minn.1988) (noting that because first-party coverage and third-party coverage contemplate different risks they are assigned different prices).

■ In general, an insurer's liability is determined by the insurance contract as long as that insurance policy does not omit coverage required by law and does not violate applicable statutes. *Lynch*, 626 N.W.2d at 185. In *Lynch*, we determined that "because the UIM coverage mandated by the [No–Fault] Act is not intended to serve as a supplement for the insured's inadequate liability coverage, an insurer can write and enforce an exclusion that precludes. that coverage conversion." *Id.* at 189. Coverage conversion occurs when UIM benefits are used as a substitute for the tortfeasor's inadequate liability coverage. *Id.; see, e.g., Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288, 291 (Minn.1983); *Petrich*, 427 N.W.2d at 245–46. The purpose of liability insurance is to protect "passengers in [the at-fault] vehicle from negligent driving of the owner or another driving the vehicle," while UIM coverage is designed to

> protect against a different type of risk, the risk that a negligent driver of another vehicle will have failed to purchase adequate liability insurance; that is, it is intended "to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile."

*Meyer*, 371 N.W.2d at 537 (quoting *Myers*, 336 N.W.2d at 291). When a liability claim is made on one policy and a UIM claim is made on a second policy, both of which list the tortfeasor as an insured, allowing the UIM claim would result in the payment of additional benefits for injuries caused by the negligence of the insured tortfeasor, which is, as we stated in *Lynch*, the "essence of liability coverage." 626 N.W.2d at 188.

■ As noted above, Kelly's damages exceeded the liability coverage purchased by her husband on the Intrepid. As a result, he, as the tortfeasor, is liable for Kelly's damages that exceeded the liability coverage on the Intrepid. To the extent that Kelly is able to obtain benefits under the Grand Am policy for damages exceeding the benefits from the Intrepid policy, her husband receives more liability protection than is provided for in the Intrepid policy. To allow Kelly's husband to benefit from providing inadequate liability coverage on the Intrepid by supplementing that coverage with cheaper UIM coverage from a separate policy that also names him as an insured results in coverage conversion for which insurance companies may write and enforce policy exclusions. Because, as we said in *Lynch*, UIM benefits are "not intended to serve as a supplement for the insured's inadequate liability coverage," we conclude that under the facts of this case the Grand Am's policy exclusion of the Intrepid from the definition of "underinsured motor vehicle" works to prevent coverage conversion and is therefore permitted and enforceable under the No–Fault Act. *Id.* at 189.

This conclusion does not, as Kelly contends, conflict with our holding in *Sarvela*. *Sarvela* involved a woman injured in a collision with an underinsured automobile while driving her motorcycle. *Sarvela*, 327 N.W.2d at 77–78. The woman collected the liability policy limits from the auto driver's insurer and UIM coverage from

her motorcycle insurance policy. *Id.* at 78. She then attempted to collect UIM benefits from a policy she had on another motor vehicle, an automobile that she owned. *Id.* Her insurer denied the claim, relying on a policy exclusion that precluded coverage if the insured was injured while occupying a motor vehicle that the insured owned. *Id.* The issue in *Sarvela* was whether an individual could obtain UIM coverage from two separate policies that she owned when she was injured in a two motor vehicle accident and had already obtained liability benefits from the other person's motor vehicle insurance. Because the insurance policies from which Sarvela sought UIM coverage did not list the tortfeasor as an insured, the claim at issue in *Sarvela* was a straightforward first-party insurance claim. *See Myers*, 336 N.W.2d at 292. Because coverage conversion was not at issue in *Sarvela*, it provides no guidance here.

Therefore, today's decision is consistent with *Petrich*, *Myers*, *Meyer*, and *Lynch*, which held that policy exclusions preventing an insured from using UIM coverage to supplement his or her otherwise inadequate liability insurance are permissible.[2]

Affirmed.

GILBERT, J., and HANSON, J., took no part in the consideration or decision of this case.

### DISSENT

MEYER, Justice (dissenting).

We are faced with the novel question of whether an insurer's exclusion of vehicles regularly used by family members from its definition of "underinsured motor vehicle"

contravenes the purpose behind the No-Fault Act as articulated in Minn.Stat. § 65B.42 (2002). I conclude that it does and would hold the exclusion invalid under the facts of this case.

Minnesota Statutes § 65B.42 states that the No-Fault Act was promulgated, in part, "to relieve the severe economic distress of uncompensated victims of automobile accidents within this state * * * without regard to whose fault caused the accident." In order to achieve that purpose, the legislature mandated that automobile owners insure themselves against situations in which the at-fault party does not have sufficient liability coverage to make whole a victim's injury. *See* Minn. Stat. § 65B.49, subd. 3a (2002). In general, policy exclusions that contravene the purpose of the No-Fault Act will not be enforced. *See Am. Motorist Ins. Co. v. Sarvela*, 327 N.W.2d 77, 79 (Minn.1982); *DeVille v. State Farm Mut. Auto. Ins. Co.*, 367 N.W.2d 574, 576 (Minn.App.1985). We have carved one exception to that general rule, holding that policy exclusions that prevent insureds from converting first-party coverage into third-party liability coverage will be enforced. *See, e.g., Lynch v. Am. Family Mut. Ins. Co.*, 626 N.W.2d 182, 189 (Minn.2001); *Petrich v. Hartford Fire Ins. Co.*, 427 N.W.2d 244, 246 (Minn.1988); *Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288, 291–92 (Minn.1983). Therefore, we must decide first whether invalidating State Farm's exclusion of family vehicles from the definition of "underinsured motor vehicle" constitutes improper coverage conversion in this case, and if it does not, whether the exclusion undermines the legislative purpose to protect insureds from

---

**2.** State Farm also based its denial of Kelly's claim on its interpretation of the statutory language in Minn.Stat. § 65B.49, subd. 3a(5) (2002), which it contends limits Kelly's recovery solely to the at-fault vehicle. Because we conclude that the policy exclusion at issue here is enforceable, we need not and therefore do not address this contention.

the economic losses stemming from injuries caused by underinsured motorists.

In the cases in which we have identified coverage conversion, the insured party has either been attempting to seek UIM benefits under *another* person's insurance policy, or attempting to seek UIM benefits under the *same policy* that provided the liability coverage. *See Myers,* 336 N.W.2d at 290 (concluding heirs of deceased passenger could not collect UIM benefits under policy of owner of vehicle); *Petrich,* 427 N.W.2d at 245 (concluding individual injured in one car could not collect UIM benefits from his stepfather's policy on another car); *Meyer,* 371 N.W.2d at 536 (concluding insured could not collect UIM from same automobile insurance policy that provided liability coverage); *Lynch,* 626 N.W.2d at 189 (concluding that to recover UIM under the same policy that had paid liability benefits constituted conversion). Unlike those cases, Kelly is properly attempting to recover UIM under her own insurance policy on the Grand Am, and that policy is not the one that paid the liability coverage. She is not converting her first-party insurance into third-party insurance, but attempting to reap the benefit of the bargain she struck when she and her husband separately insured the Grand Am. *See also Kelly v. State Farm Mut. Auto. Ins. Co.,* No. C0–02–217, 2002 WL 1837992, at *4–5 (Minn.App. Aug. 13, 2002) (Hanson, J., concurring) (explaining why Kelly was not attempting an illicit conversion).

The majority relies almost exclusively on *Lynch* in reaching its conclusion that Kelly is attempting conversion, despite *Lynch's* very different facts. In *Lynch* we held that the son improperly converted his father's automobile policy because he had already collected liability insurance under the same policy. *Lynch,* 626 N.W.2d at 188–89 ("In these circum-stances, paying UIM benefits from the same policy results in paying additional benefits for the injuries caused by the negligence of the insured * * * [t]hat is the essence of liability coverage."). But we went on to conclude that because such conversion was not prohibited by the terms of the insurance policy, it did not contradict the No–Fault Act, and the policy would be enforced, despite the conversion. *Id.* at 190.

As applied to the facts of this case, *Lynch* is inapposite because Kelly is not attempting to collect UIM from the same policy that paid her bodily injury liability. State Farm's definition of "underinsured motor vehicle" is not preventing conversion of first-party insurance to third-party insurance, but preventing an insured from collecting her UIM coverage at all. Under the majority's result, Kelly receives nothing from her underinsured motorist coverage, despite having paid for such mandatory coverage.

Having concluded that Kelly is not attempting any sort of prohibited policy conversion by claiming UIM benefits, I next examine whether State Farm's policy definition of an "underinsured motor vehicle" comports with the public policy behind the No–Fault Act. The clear terms of the statute show that the legislature's intent was "to relieve the severe economic distress of uncompensated victims of automobile accidents within this state * * * without regard to whose fault caused the accident." Minn.Stat. § 65B.42. In contrast, the policy exclusion in this case leaves Kelly under-compensated for her injuries solely because her husband caused the accident while driving a car he owned. I do not believe the legislature intended marriage to serve as a barrier to an individual's relief from the "severe economic distress" caused by the negligence of an underinsured tortfeasor. I certainly do not believe the legislature intended the hyper-

technical distinctions between who does and does not receive UIM that the majority introduces—focusing on who has title to the car and who is a named insured on the insurance policy.[1] Therefore, I would conclude that State Farm's definition is invalid under the facts of this case, and Kelly can recover UIM benefits under her insurance policy on the Grand Am.

We have never before decided whether an insurer can define an "underinsured motor vehicle" in order to prevent one spouse from recovering under his or her UIM coverage when the injury was caused by the other spouse and liability has been paid from a policy on a different vehicle. Faced with this novel question of law, I would hold that State Farm's definition cannot be enforced to prevent Kelly from receiving UIM under her automobile insurance policy because to do so would contravene the purpose of Minnesota's No–Fault Act.

1. As is probably true for most married couples, Kelly and her husband were both named insureds on each of their automobile insurance policies. It appears that if Kelly's husband were not named as an insured on the Grand Am, the majority would not find Kelly was attempting improper coverage conversion, and hold the exclusion inapplicable. This distinction seems a feeble basis to deny adequate compensation and is contrary to the statutory requirement of mandatory underinsurance coverage.