Tammy PEPPER, Respondent,

v.

STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPANY a/k/a
State Farm Fire and Casualty Compa-
ny a/k/a State Farm Insurance Com-
panies, Appellant.

No. A10–2090.

Supreme Court of Minnesota.

May 30, 2012.

Alan B. Fish, Alan B. Fish, P.A., Roseau, MN, for respondent.

Kay Nord Hunt, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN; and Karen R. Cote, Brett W. Olander & Associates, Saint Paul, MN, for appellant.

## OPINION

ANDERSON, PAUL H., Justice.

Tammy Pepper suffered serious injuries in a single-vehicle accident when she was struck by a pickup truck owned by her sister and driven by her stepfather. Following the accident, Pepper sought insurance benefits under three policies. First, Pepper sought and recovered liability benefits from her sister's insurer. Second, Pepper sought and recovered liability benefits from her stepfather's insurer, State Farm Mutual Insurance Company (State Farm). Third, Pepper sought, but did not recover, underinsured motorist coverage under a separate State Farm policy held by her stepfather. State Farm denied that it owed Pepper underinsured motorist coverage under the stepfather's policy on

the ground that the terms of that policy excluded the sister's truck from its definition of vehicles eligible for underinsured motorist coverage. The Roseau County District Court granted summary judgment to State Farm, concluding that the exclusion in the stepfather's policy was valid because the exclusion was designed to prevent coverage conversion. A divided panel of the court of appeals reversed the district court. We reverse the court of appeals.

On September 3, 2009, respondent Tammy Pepper suffered injuries when a 1994 Ford pickup truck, owned by Pepper's sister Tracie Drew, and driven by Pepper's stepfather, Frank Matlachowski, backed into Pepper and pressed her against an exterior wall of her home. Just before the accident, Pepper had been standing in the yard of the home she shared with her mother and Matlachowski, while she watched Matlachowski prepare to unload a dishwasher from the back of the truck. To make unloading easier, Matlachowski wanted to back up the truck to a set of steps leading into the house. He began to back up the truck by pressing on the accelerator while the truck was in reverse gear. When Matlachowski pressed on the truck's accelerator, the accelerator stuck "wide open" and the truck shot backward toward Pepper and pinned her against the exterior wall of the house. Following the accident, Pepper required hospitalization and surgery. As of February 2010 Pepper had incurred medical expenses in excess of $170,000.

Drew insured the truck through State Farm. Pepper sought liability benefits under Drew's State Farm policy. State Farm eventually paid Pepper the policy's liability limit of $100,000.

Because $100,000 from Drew's policy did not adequately compensate Pepper for her injuries, she sought additional liability benefits under two policies owned by Matlachowski. Matlachowski insured two vehicles through State Farm under separate policies. Even though Matlachowski was not the owner of Drew's truck, his liability coverage in each policy extended to the accident. More specifically, the policies provided liability coverage for the "use, by [Matlachowski], of a ... a non-owned car," [1] including Drew's truck. (Emphasis omitted.)

The terms of Matlachowski's two policies with State Farm contained a provision that required State Farm to pay on Matlachowski's behalf only the limits of the policy with the "highest limit of liability." The specific provision in the policies stated that:

**If There Is Other Liability Coverage**

**1. Policies Issued by Us to You, Your Spouse, or Any Relative**

If two or more vehicle liability policies issued by us to *you, your spouse,* or any *relative* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

Both policies had a liability limit of $100,000 per person, so State Farm paid $100,000 to Pepper in liability benefits. Pepper then signed releases of all claims against Drew and Matlachowski. In both of those releases, however, Pepper "specifically reserve[d]" a "claim for underinsured motorist benefits against State Farm Insurance."

Pepper next sought underinsured motorist (UIM) benefits from State Farm under

---

1. The policies define a "non-owned car" as a "car not: (1) owned by or leased to, (2) registered in the name of; or (3) furnished or available for the regular or frequent use of you, your spouse or any relatives." (Emphasis omitted.)

Matlachowski's policies.[2] UIM coverage "protect[s insured persons] who are legally entitled to recover damages for bodily injury from owners or operators" of motor vehicles insured by a liability policy with a "limit for bodily injury liability ... less than the amount needed to compensate the insured for actual damages." Minn.Stat. § 65B.43, subds. 17, 19 (2010). Matlachowski's policies in particular provide:

### UNDERINSURED MOTOR VEHICLE–COVERAGE

. . . .

We will pay damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *underinsured motor vehicle.* The *bodily injury* must be sustained by an *insured* and caused by accident [sic] arising out of the operation, maintenance or use of an *underinsured motor vehicle.*

Matlachowski's policies define an underinsured motor vehicle as a vehicle

insured or bonded for bodily injury liability in amounts that:

(1) meet the requirements of the laws of the state where *your car* is mainly garaged; and

(2) are less than the amount needed to compensate the *insured* for damages.

The policies each have a $100,000 UIM coverage limit per person. But the policies exclude from underinsured motor vehicles any vehicle "insured under the liability coverage of this policy" (hereinafter referred to as the insured-vehicle exclusion).

Pepper asserted to State Farm that as an "insured" under Matlachowski's policies, she was entitled to UIM coverage because the at-fault vehicle, Drew's truck, was an underinsured motor vehicle. State Farm denied UIM coverage on the ground that Drew's truck did not qualify as an underinsured motor vehicle because of the insured-vehicle exclusion in the policies. State Farm argued that Drew's truck was "insured under the liability coverage" of Matlachowski's policies by virtue of Matlachowski's operation of the truck.[3]

On January 14, 2010, Pepper commenced an action against State Farm in Roseau County District Court, alleging that she was entitled to UIM coverage under the Matlachowski policy that did not pay out liability benefits. State Farm moved for summary judgment, arguing that Pepper was not entitled to UIM benefits because Drew's truck did not qualify as an underinsured motor vehicle because of the insured-vehicle exclusion. The court granted summary judgment to State Farm. The court found the policy exclusions in Matlachowski's policies to be similar to other insured-vehicle exclusions that have been "consistently upheld" because the exclusions "prevent an insured from using their own UIM coverage ... to compensate for their failure to purchase sufficient liability coverage." The court concluded that an exception to this reasoning—which allows an injured person to recover UIM benefits from an at-fault driver when another at-fault vehicle provided insufficient liability coverage—did not apply because the exception requires two vehicles, and Pepper's accident in-

---

2. Under Minn.Stat. § 65B.49, subd. 3a(5) (2010), which governs UIM coverage, as a pedestrian, Pepper was "entitled to select any one limit of liability for any one vehicle afforded by a policy under which the injured person is insured."

3. As noted earlier, Matlachowski's policies provided liability coverage for the "use, by an insured, of a newly acquired car, a temporary substitute car or a non-owned car." (Emphasis omitted.) Thus, Drew's truck was insured under the Matlachowski policies because Matlachowski drove the nonowned vehicle.

volved only one vehicle. The court also concluded that the insured-vehicle exclusion did not violate the No–Fault Act. Based on these conclusions, the court held that Pepper was not entitled to recover UIM benefits under either of Matlachowski's policies and granted State Farm's motion for summary judgment.

Pepper appealed. A divided panel of the court of appeals reversed the district court, noting that this case presented a "matter of first impression." *Pepper v. State Farm Mut. Auto. Ins. Co.,* 806 N.W.2d 94, 98 (Minn.App.2011). The court of appeals recognized that the No–Fault Act permits insurers to deny UIM coverage when allowing UIM coverage would result in coverage conversion. *Id.* at 97. But the court concluded that the insured-vehicle exclusion was "overbroad" and "omitt[ed] coverage required by law." *Id.* at 98. The court held that "when both the underinsured owner of the vehicle and the policyholder-driver are at fault, UIM benefits to an injured person who is an insured under the driver's policy do not constitute conversion of the driver's coverage and cannot be denied." *Id.* at 95. The dissent disagreed, stating that the court of appeals "has repeatedly noted that, where only one car is involved or at fault, an injured passenger may *not* obtain UIM benefits from the driver's insurer." *Id.* at 100 (Toussaint, J., dissenting). Thus, the dissent concluded that the insured-vehicle exclusion "neither omits coverage required by law nor violates applicable statutes." *Id.* at 101.

State Farm appealed and we granted review. On appeal, State Farm argues that allowing Pepper to recover both liability benefits and UIM benefits under Matlachowski's policies results in coverage conversion. State Farm further argues that policy exclusions that prevent coverage conversion are enforceable under the

No–Fault Act. Following State Farm's appeal, Pepper filed a motion to strike references by State Farm to the sheriff's report of the accident, arguing that the report is not properly part of the record on appeal in this case.

## I.

As a preliminary matter, on December 19, 2011, Pepper filed a motion to strike certain references made by State Farm to the sheriff's report of the accident. Pepper argues that neither party filed the report with the district court or introduced the report as an exhibit, and thus under Minn. R. Civ.App. P. 110.01 the report is not part of the record on appeal. But the record indicates that Pepper's counsel attached the sheriff's report to his August 6, 2010, affidavit, which accompanied a discovery motion submitted to the district court. Thus, we conclude that the report is part of the record. We therefore deny Pepper's motion to strike.

## II.

■■ We interpret insurance contracts de novo. *Auto–Owners Ins. Co. v. Forstrom,* 684 N.W.2d 494, 497 (Minn.2004) (citing *Vue v. State Farm Ins. Cos.,* 582 N.W.2d 264, 265 (Minn.1998)). We also interpret statutes, such as the No–Fault Act, de novo. *Id.* Finally, when considering an appeal from summary judgment, we determine whether the district court erred in its application of law to undisputed facts, but review the court's legal conclusions de novo. *Id.* (citing *Lefto v. Hoggsbreath Enters., Inc.,* 581 N.W.2d 855, 856 (Minn.1998)).

■■ While this case presents a matter of first impression, our jurisprudence concerning the No–Fault Act and coverage conversion is extensive and well developed. The No–Fault Act attempts "to relieve the severe economic distress of uncompensat-

ed victims of automobile accidents" by requiring that every insurance policy issued in Minnesota provide certain first- and third-party coverage. Minn.Stat. §§ 65B.42, .49, subd. 3a; *see Lobeck v. State Farm Mut. Auto. Ins. Co.,* 582 N.W.2d 246, 249–50 (Minn.1998). We have said that "[f]irst-party coverage pays benefits to the insured, often regardless of the vehicle the insured was occupying at the time of a motor vehicle accident." *Latterell v. Progressive N. Ins. Co.,* 801 N.W.2d 917, 922 (Minn.2011). In that sense, first-party coverage generally " 'follow[s] the insured person.' " *Id.* (quoting *Lobeck,* 582 N.W.2d at 250). UIM coverage is an example of first-party coverage required by the No–Fault Act. *See id.* at 922–23 (acknowledging that UIM coverage has characteristics of both first- and third-party benefits, but that courts "treat[ ] UIM coverage as first-party coverage for purposes of the No–Fault Act"). But "unlike some other types of first-party coverage," primary UIM coverage "follows the vehicle rather than the insured on the policy."[4] *Id.* at 923. In contrast, "third-party coverage pays benefits to individuals other than the named insured." *Id.* at 922. In that sense, "[t]hird-party coverage follows the vehicle." *Id.* Liability coverage is an example of third-party coverage. *Id.*

We have explained that "[f]irst party coverage and third party coverage contemplate different risks. They are not the same and they are not priced the same." *Petrich v. Hartford Fire Ins. Co.,* 427 N.W.2d 244, 246 (Minn.1988). For example, "[l]iability insurance is purchased by an owner of a vehicle to protect passengers in that vehicle from the negligent driving of the owner or another driving the vehicle." *Meyer v. Ill. Farmers Ins. Grp.,* 371 N.W.2d 535, 537 (Minn.1985). UIM coverage, on the other hand, "is intended to protect against a different type of risk, the risk that a negligent driver of another vehicle will have failed to purchase adequate liability insurance." *Id.* Because first- and third-party coverage protect against different risks and because consumers pay substantially less for first-party coverage than they do for third-party coverage, we have held that first- and third-party coverage may not be substituted for one another. *See id.*

We have also explained that if first- and third-party coverage are substituted for one another, the result is that the "UIM benefits are used as a substitute for the tortfeasor's inadequate liability coverage," and thus "[c]overage conversion occurs." *Kelly v. State Farm Mut. Auto. Ins. Co.,* 666 N.W.2d 328, 331 (Minn.2003). We have said that UIM coverage " 'is not designed to compensate [the owner] or his additional insureds from [the owner's] failure to purchase sufficient liability insurance.' " *Petrich,* 427 N.W.2d at 245 (quoting *Myers v. State Farm Mut. Auto. Ins.,* 336 N.W.2d 288, 291 (Minn.1983)); *see also Latterell,* 801 N.W.2d at 925 n. 4. Instead, "[a]n insured wishing to provide greater protection from his own negligence for himself and his passengers should purchase additional liability insurance coverage." *Meyer,* 371 N.W.2d at 537.

Coverage conversion can arise "when a family member injured in an automobile accident tries to recover third-party

---

4. We recently explained:
    The Minnesota Legislature amended the No–Fault Act in 1985 by, among other things, adding subdivision 3a to section 65B.49. Act of June 27, 1985, ch. 10, § 68, 1985 Minn. Laws 1st Spec. Sess. 1781, 1840–41. We have explained that the 1985 amendment "reflect[s] a broad policy decision to tie ... [UIM] coverage to the particular vehicle involved in the accident."
    *Latterell,* 801 N.W.2d at 923 n. 1 (citations omitted).

liability benefits from an at-fault family member, and then recover first-party UIM benefits under the same policy to recoup the remainder of his or her damages." *Latterell,* 801 N.W.2d at 925 n. 4 (citing *Lynch ex rel. Lynch v. Am. Family Mut. Ins. Co.,* 626 N.W.2d 182, 183–84 (Minn. 2001)). In that scenario, allowing UIM recovery would, "in essence, be allowing an individual to increase liability coverage by purchasing less expensive underinsured coverage." *Meyer,* 371 N.W.2d at 537; *see also Petrich,* 427 N.W.2d at 246 (stating that allowing coverage conversion "is unfair to the insurer which charges a much lesser premium for first party coverage").

. For the reasons listed above, we have stated that "an insurer may permissibly preclude such coverage conversion with an owned-vehicle exclusion and that UIM coverage will not be implied as a matter of law where it would result in coverage conversion." *Lynch,* 626 N.W.2d at 189. In other words, such an exclusion is valid under the No–Fault Act. *See, e.g., Kelly,* 666 N.W.2d at 331. With this context in mind, we now turn to the validity of the insured-vehicle exclusion in Matlachowski's State Farm policy.

▮ Our "well-settled general rule in the construction of insurance contracts" permits parties "to contract as they desire, and so long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes, the extent of the insurer's liability is governed by the contract entered into." *Am. Family Mut. Ins. Co. v. Ryan,* 330 N.W.2d 113, 115 (Minn.1983). We determine whether an exclusion in an insurance contract violates the No–Fault Act, Minn.Stat. §§ 65B.41–71 (2010), by first considering whether the terms of the exclusion are unambiguous. *Latterell,* 801 N.W.2d at 920. If the terms of the exclusion are unambiguous, we then consider whether the exclusion omits cov-

erage required by the No–Fault Act or contravenes the No–Fault Act. *Id.* at 921; *see also Lobeck,* 582 N.W.2d at 249.

We have held that policy exclusions that prevent coverage conversion do not violate the No–Fault Act and are otherwise enforceable. *E.g., Kelly,* 666 N.W.2d at 331; *see also, e.g., Meyer,* 371 N.W.2d at 537; *Myers,* 336 N.W.2d at 291. Thus, to determine whether the insured-vehicle exclusion provision in Matlachowski's policies is valid under the No–Fault Act, we determine whether (1) the terms of the exclusion are unambiguous, and if so, whether (2) the exclusion prevents Pepper from engaging in coverage conversion. *See, e.g., Latterell,* 801 N.W.2d at 920; *Lynch,* 626 N.W.2d at 185.

▮ We have stated that the "[g]eneral principles of contract interpretation apply to insurance policies." *Lobeck,* 582 N.W.2d at 249. Further, " '[e]xclusions in a policy ... are as much a part of the contract as other parts thereof and must be given the same consideration in determining what is the coverage.' " *Id.* (quoting *Bobich v. Oja,* 258 Minn. 287, 295, 104 N.W.2d 19, 24–25 (1960)). Exclusions "are ambiguous only when they are 'reasonably subject to more than one interpretation.' " *Latterell,* 801 N.W.2d at 920 (quoting *Am. Commerce Ins. Brokers, Inc. v. Minn. Mut. Fire & Cas. Co.,* 551 N.W.2d 224, 227 (Minn.1996)). But when an exclusion's "language is clear and unambiguous," we will interpret the exclusion " 'according to plain, ordinary sense so as to effectuate the intention of the parties.' " *Carlson v. Allstate Ins. Co.,* 749 N.W.2d 41, 45 (Minn.2008) (quoting *Canadian Universal Ins. Co. v. Fire Watch, Inc.,* 258 N.W.2d 570, 572 (Minn.1977)).

State Farm asserts, and Pepper does not dispute, that the insured-vehicle exclusion is unambiguous. Thus, we must determine whether allowing Pepper to re-

cover both liability coverage and UIM coverage under Matlachowski's policies would result in coverage conversion. The question whether coverage conversion occurs when an insured who has recovered liability benefits from two tortfeasors also recovers UIM benefits under a separate policy held by one of the tortfeasors is a question of first impression for our court. If we determine that allowing Pepper to recover UIM benefits from a Matlachowski policy would result in coverage conversion, and the insured-vehicle exclusion provision prevents that coverage conversion, State Farm may enforce its insured-vehicle exclusion without violating the No–Fault Act.

While this case presents a matter of first impression for our court, we have previously considered whether coverage conversion exists in other somewhat similar circumstances. For example, we have held that coverage conversion arises when an insured recovers both liability benefits and UIM benefits under the same policy. *E.g., Lynch,* 626 N.W.2d at 188–89; *Meyer,* 371 N.W.2d at 536–37; *Myers,* 336 N.W.2d at 291. We have also held that coverage conversion arises when an insured recovers liability benefits under one policy and UIM benefits under a separate policy when both policies insure the same tortfeasor. *Kelly,* 666 N.W.2d at 331.

In *Kelly,* the insured was injured when the vehicle that she occupied as a passenger collided with an unoccupied vehicle. *Id.* at 329. The insured's husband was the driver and sole owner of the occupied vehicle involved in the accident. *Id.* The insured and her husband were both listed as named insureds on two separate automobile policies issued by the same insurer. *Id.* One policy covered the vehicle in the accident, and the second policy covered another vehicle the insured and her husband jointly owned. *Id.* The insured re-

covered $100,000 in liability benefits under the policy insuring the occupied vehicle involved in the accident. *Id.* The insured then sought UIM coverage under the policy insuring the jointly owned vehicle not involved in the accident. *Id.* But that policy excluded from its definition of "underinsured motor vehicle" a vehicle "furnished for the regular use of you, your spouse or any relative." *Id.* at 330. The district court held that the insured was not entitled to UIM benefits because her husband, the tortfeasor, was also listed as an insured under the policy. *Id.*

We agreed with the district court and upheld the exclusion. *Id.* at 331. We concluded that allowing the insured to recover UIM coverage under the second policy would constitute coverage conversion because "[w]hen a liability claim is made on one policy and a UIM claim is made on a second policy," and "both [policies] list the tortfeasor as an insured, allowing the UIM claim would result in the payment of additional benefits for injuries caused by the negligence of the insured tortfeasor," which is "the 'essence of liability coverage.'" *Id.* at 331 (quoting *Lynch,* 626 N.W.2d at 188).

We conclude that our analysis in *Kelly* dictates the result in this case. Here, both State Farm policies insure the same tortfeasor—Matlachowski. Allowing Pepper to recover both liability benefits and UIM benefits from policies insuring Matlachowski would create the same coverage conversion prohibited by the policy exclusion we upheld in *Kelly.* Arguably, because the Matlachowski policies also insure Pepper, we could view Pepper as seeking UIM coverage under "her own [separate] underinsured motorist coverage." *Myers,* 336 N.W.2d at 291; *see also Kelly,* 666 N.W.2d at 333 (Meyer, J., dissenting). But Pepper's status as an insured under that policy does not render irrelevant the fact that

the policy also insures Matlachowski. If it did, the outcome in *Kelly* would have been different. We concluded coverage conversion existed in *Kelly* even though Kelly sought UIM benefits under a policy that insured her. 666 N.W.2d at 329. What mattered in *Kelly* was that the policy also insured Kelly's husband, the tortfeasor. *Id.* at 331.

Here, Matlachowski chose to purchase insurance under two separate policies, each of which had a liability limit of $100,000. Pepper suffered more than $100,000 in injuries. Allowing Pepper to recover UIM benefits under Matlachowski's policies would allow Matlachowski "to benefit from providing inadequate liability coverage ... by supplementing that coverage with cheaper UIM coverage." *Kelly,* 666 N.W.2d at 331; *see also Latterell,* 801 N.W.2d at 925 n. 4. We conclude that because the insured-vehicle exclusion prevents Matlachowski from supplementing his liability coverage with UIM coverage and thus engaging in coverage conversion, State Farm's exclusion is valid under the No–Fault Act. Therefore, we hold that the district court was correct that Pepper is not entitled to UIM benefits in this case, and we reverse the court of appeals.

Reversed.