CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY v. AIR-O-FLEX EQUIPMENT COMPANY.

126 N. W. (2d) 773.

March 6, 1964—No. 39,056.

*Kueppers, Strong & Kueppers* and *Harry P. Strong, Jr.,* for appellant.

*Stringer, Donnelly & Sharood, Richard A. Rohleder,* and *Edward C. Stringer,* for respondent.

ROGOSHESKE, JUSTICE.

Defendant appeals from a judgment entered in favor of the plaintiff in an action to recover additional freight charges due on interstate shipments.

The issue before the trial court was whether the freight rate to be charged should be based upon a classification of the shipments as complete articles under Rule 20 of Uniform Freight Classification No. 4, as claimed by plaintiff, or as a mixture of miscellaneous fabricated-steel parts under Rule 10, as claimed by defendant.

The sole question to be determined is whether the trial court properly classified the shipments as complete articles, thus entitling the plaintiff to collect higher freight charges than the amounts paid by defendant.

The facts are not in dispute. Defendant manufactures and sells a machine described as a truck dumper or unloader designed to aid in unloading bulk, flowable materials from trucks or semitrailers. It consists of a large steel platform which is hinged at one end, thereby enabling the other end to be raised and lowered by two hydraulic rams. When a truck is driven upon the platform and made secure thereon, the platform is raised to about a 35-degree angle and the materials from the truck or trailer are emptied by the force of gravity. Between July 1958 and April 1959, defendant shipped seven carloads of the component parts of these machines from its manufacturing plant in Minneapolis to various points in the southwest. In six of the shipments, each carload included all of the separated component parts of one or two unloaders except the two hydraulic rams required for each machine.[1] Defendant now admits that the seventh shipment included the

---

[1] The foundation anchor bolts and the fluid for operating the hydraulic

hydraulic rams and, therefore, was a shipment of the parts of a complete unloader and was properly classified as a complete article under Rule 20. Defendant readily acknowledges that the purpose of separating the machine into its component parts and withholding the hydraulic rams from each shipment was to obtain the lowest applicable freight rate. Accordingly, when defendant prepared the bills of lading for each of the six shipments, it described the shipments as miscellaneous fabricated-steel parts. The agency of the railroad at origin, the Western Weighing and Inspection Bureau, and subsequently its supervising agency, the Western Classification Committee, classified the shipments as machinery NOIBN (not otherwise indexed by name). Under Rule 20 of the uniform classifications, which has been approved by the Interstate Commerce Commission, each carload was determined by these carrier agencies to include one or two complete, or substantially complete, articles or machines. Rule 20 provides:

"Parts or pieces constituting a complete article, received as one shipment on one bill of lading, will be charged at the rating or rate provided for complete article."

Defendant refused to pay the increased charges occasioned by this classification and this action for undercharges was instituted. If the six shipments are properly classified as complete articles within the meaning of Rule 20, the stipulated difference in freight charges due in excess of those paid is $2,695.67.

The question thus becomes whether, under Rule 20, the shipments, absent the hydraulic rams, constitute complete articles or machines.

The reasonableness and validity of the rule as part of the lawfully filed and published tariffs for interstate shipment by rail are in no wise challenged. Although the parties rely exclusively upon decisions of the Interstate Commerce Commission interpreting and applying the rule, they are in apparent agreement that the question is properly one for judicial determination and not one requiring preliminary resort to

---

rams also were not included, but defendant now concedes that only the absence of the hydraulic rams needs to be considered in support of its contention that incomplete machines were shipped.

the commission.[2] Defendant simply contends that, within the plain meaning of the rule, all of the parts essential to assemble a complete, or substantially complete, machine were not included; that the hydraulic rams are the "heart" of the machine, available only from defendant, and their absence requires that the shipment be regarded as incomplete articles and classified as miscellaneous fabricated-steel parts. Plaintiff insists that the absence of the hydraulic rams did not alter the fundamental character of the machines or affect their identity as substantially complete machines. Plaintiff concedes that, if the parts withheld from the shipments render the machines incomplete articles, the proper classification for tariff purposes is miscellaneous fabricated-steel parts.

We find no decisions of this court or of any appellate court which would control our interpretation and application of the phrase "parts or pieces constituting a complete article" in the context here involved. The parties cite and rely upon numerous cases of the Interstate Commerce Commission, but we have been unable to discover any administrative decision which has interpreted the rule and applied it to facts essentially similar to those before us. However, because of the commission's familiarity with the conditions of the transportation industry which it regulates, and because under Federal statutes it must

---

[2]Even though the parties do not suggest the problem of primary jurisdiction and we are persuaded that the doctrine need not be applied here, it should be noted that the courts, in deference to the commission's expertise in the field of transportation and in furtherance of uniformity, refrain from exercising jurisdiction until after a decision of the commission in instances where the question involves a claim that a rate is unreasonable or unjustly discriminatory or involves a construction of a tariff or rule containing technical words or phrases intended to have a unique or peculiar meaning requiring the skills of administrative specialists. United States v. Western Pac. R. Co. 352 U. S. 59, 77 S. Ct. 161, 1 L. ed. (2d) 126; Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co. 204 U. S. 426, 27 S. Ct. 350, 51 L. ed. 553; G. N. Ry. Co. v. Merchants Elev. Co. 259 U. S. 285, 42 S. Ct. 477, 66 L. ed. 943. See, also, Reliance Elev. Co. v. Chicago, M. & St. P. Ry. Co. 139 Minn. 69, 165 N. W. 867; N. P. Ry. Co. v. Knauf & Tesch Co. 17 Wis. (2d) 249, 116 N. W. (2d) 138; Jaffe, *Primary Jurisdiction Reconsidered*, 102 U. of Pa. L. Rev. 577, 581.

approve of the tariffs submitted by the railroads before they have the force of law, in accordance with the principle underlying the doctrine of primary jurisdiction, we accord to its decisions, in so far as they are pertinent, the weight ordinarily given to informed administrative actions.[3] It is clear from those decisions that a shipper may deliberately avoid the application of the complete-article tariff by separating an article into its component parts and withholding from a shipment sufficient of the parts to avoid the assessment of higher freight charges produced by classifying the shipment as a complete article.[4] In interpreting and applying the rule, the commission has consistently held that the parts shipped are to be viewed collectively from a transportation and tariff standpoint, and when the missing parts do not alter the fundamental character of the article or affect its identity, the complete-article rate is applicable.[5] Under this test, the parts shipped are viewed as if assembled, and if the absent parts either alter the fundamental character of the article or affect its identity, classifying the article as complete is not justified. It is evident that under this test a determination of whether the rule applies necessarily depends upon the facts of each case. The controlling factor is the relative significance of the parts withheld from shipment to the fundamental character or identity of the complete article.

The trial court held that the shipments consisted of substantially complete machines, and therefore the complete-article rate was applicable. Unlike defendant's argument before us, its position then was that other parts (in addition to the rams) missing from the shipment were

---

[3]See, 3 Davis, Administrative Law, §§ 19.01 and 19.02; Reliance Elev. Co. v. Chicago, M. & St. P. Ry. Co. 139 Minn. 69, 165 N. W. 867. See, also, Louisville & N. R. Co. v. Rice, 247 U. S. 201, 38 S. Ct. 429, 62 L. ed. 1071.

[4]Associated Tel. Co. Ltd. v. Chicago & N. W. Ry. Co. 251 I. C. C. 311; Graver Corp. v. Southern Ry. Co. 156 I. C. C. 619.

[5]Associated Tel. Co. Ltd. v. Chicago & N. W. Ry. Co. *supra*; Dresser-Stacey Co. v. Abilene & S. Ry. Co. 291 I. C. C. 677; Soule Steel Co. v. Southern Pac. Co. 289 I. C. C. 793; International Derrick & Equipment Co. v. Pennsylvania R. Co. 283 I. C. C. 793; Brunswick-Balke-Collender Co. v. Chicago, G. W. R. Co. 179 I. C. C. 754.

significant in resolving the dispute. It is also apparent that the shipper's freedom of choice to ship an incomplete, disassembled article in order to secure lower rates was not emphasized before the trial court. Although we agree with the court below that the absence of the hydraulic rams did not affect the identity of the machine when the parts shipped are viewed collectively, we cannot agree that the fundamental character of the machine as a truck unloader was not altered.[6] The evidence clearly shows that the hydraulic rams were especially designed for this machine; that they were procurable only from defendant; and that they were the essence or "heart" of the machine. In our opinion, the absence of the rams so altered the character of the machine that it would be unreasonable to say that a complete, or substantially complete, machine was shipped. The absent parts, peculiarly designed to lift the steel platform to an angle necessary for unloading, are an integral part of the fundamental character of the machine which the defendant manufactured and sold. Without these rams, the machine was no longer a truck-unloading unit but merely a large, metal and steel platform which, in our view, falls short of the character necessary to justify its classification as a complete article.

Contrary to plaintiff's contention, the question is not whether the evidence reasonably sustains the findings of the court but whether the court properly interpreted and applied the rule to undisputed facts. This question, as numerous courts have held in construing and applying rate tariffs, usually presents a question of law.[7]

---

[6]See, Southern Traffic & Audit Assn. v. International-G. N. R. Co. 160 I. C. C. 212; Oklahoma Corp. Comm. v. Midland Valley R. Co. 263 I. C. C. 783; International Derrick & Equipment Co. v. Pennsylvania R. Co. 283 I. C. C. 793. Although these decisions are helpful in arriving at this result, it is difficult to reconcile them without careful analysis of their respective facts.

[7]Porto Transport, Inc. v. Consolidated Diesel Elec. Corp. 20 F. R. D. 1 (S. D. N. Y.); N. P. Ry. Co. v. United States (8 Cir.) 213 F. (2d) 366; Corneli Seed Co. v. Union Pac. R. Co. (9 Cir.) 263 F. (2d) 127; G. N. Ry. Co. v. Merchants Elev. Co. 259 U. S. 285, 42 S. Ct. 477, 66 L. ed. 943; Union Pac. R. Co. v. Structural Steel & Forge Co. 9 Utah (2d) 318, 344 P. (2d) 157.

Accordingly, we hold that the six shipments did not constitute complete articles within the meaning of Rule 20. Plaintiff therefore is entitled to judgment of $151.05, which is the stipulated amount of the undercharges for the one shipment which defendant concedes was properly classified as a complete article. In so far as the judgment awarded an excess of this amount, it is reversed.

Reversed and remanded.