# ASSOCIATED INDEPENDENT DEALERS, INC. AND OTHERS v. MUTUAL SERVICE INSURANCE COMPANIES.

229 N. W. 2d 516.

May 16, 1975—No. 45061.

*Douglass, Bell, Donlin, Shultz & Petersen* and *James M. Shultz,* for appellant.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, J. Richard Bland,* and *O. C. Adamson II,* for respondents.

Heard before Sheran, C. J., and Peterson, Kelly, Yetka, and Scott, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

This is a declaratory judgment action brought in Ramsey County District Court to determine whether defendant insurer is liable under an automobile liability policy providing coverage to plaintiffs, Associated Independent Dealers, Inc. (AID) and Standard Storage Battery Company (Standard),[1] for losses *"arising out of the ownership, maintenance or use"* of automobiles specified in the policy. The matter was tried before the court which ordered entry of judgment holding that coverage existed. Defendant has appealed from that judgment. We reverse.

A fire originated in a warehouse owned by AID. The fire spread to an adjoining building owned by St. Paul Linoleum and Carpet Company (St. Paul Linoleum).[2] Both structures were located in St. Paul, Minnesota, and both were destroyed by the fire.

On that day AID employees and an independent contractor were remodeling an unloading dock in the AID warehouse. In order to accomplish that task it was necessary to remove several pieces of railroad track which served as a bumper for the unloading dock. An acetylene torch was used to cut these pieces of track away from the dock. Evidently, sparks from the acetylene torch ignited the fire.

---

[1] Associated Independent Dealers, Inc., and Standard Storage Battery Company are closely related corporations. Both have the same officers, both maintained offices at the premises which were destroyed by the fire, the ownership of the corporations is similar (but not identical), and both were named insureds under the policy issued by defendant.

[2] The land upon which that structure was built was owned by one Howard E. Commers.

The acetylene cutting equipment was borrowed by AID from Standard. Several AID employees had picked up that equipment from Standard in a 1969 Ford Econoline van, which was insured under the policy issued· by defendant. The equipment consisted of two oxygen tanks connected to the cutting torch by a hose. Upon arrival at the AID warehouse, the employees parked the van near the unloading dock. Although the equipment including the portable oxygen tanks was easily removable from the van, the tanks were left in the van as a matter of convenience when the actual cutting took place. The hose was long enough to extend from the van to the pieces of track that were to be removed. It is uncontested that the acetylene equipment was not permanently attached to the van. The van was not required in order for that equipment to be used.

St. Paul Linoleum and Howard E. Commers filed suit against Standard and AID seeking to recover for the damages sustained as a result of the fire. That action was predicted upon allegations that the negligence of AID and Standard and their employees was the cause of the fire.

The excess liability insurer of AID and Standard tendered defense of that action to defendant, alleging that the latter was liable under the automobile policy. Defendant rejected that tender on grounds that the fire did not arise out of the ownership, maintenance, or use of the insured vehicle. Thereafter, this declaratory judgment action was initiated to resolve the issue of whether defendant's policy in fact covered claims against AID and Standard arising from the fire.

The sole issue to be resolved is whether the fire arose out of the ownership, maintenance, or use of the insured van.

■ The question of whether a loss is sufficiently related to the ownership, maintenance, or use of an insured vehicle has been the subject of frequent judicial interpretation.[3] In general terms, it has been established that such relationship need not be

[3] Annotation, 89 A. L. R. 2d 150; 12 Couch, Insurance 2d, § 45:53, through 45:59.

a proximate cause in the strict legal sense. Rather, it is sufficient to establish that the injury or loss "was a natural and reasonable incident or consequence of the use of the [insured] vehicle." [4] It has been said that the causal connection must be "reasonably apparent," [5] and that "the mere fact that the use of the vehicle preceded the harm which was later sustained is not sufficient to bring such harm within the coverage of the policy." [6] It has also been held that the policy term "arising out of" means "originating from," or "having its origin in," "growing out of," or "flowing from." [7] In any event, each case presenting such a question must, to a great degree, turn on the particular facts presented. [8]

We hold that, under the facts of this case, the trial court could not find the requisite causal link between the alleged "use" of the insured vehicle and the fire. It is clear from the record that the fire was caused by the actual cutting of the rails or by improper maintenance of the warehouse. In any event, the fact that part of the acetylene cutting equipment was in the van when the fire began was a mere fortuity. The relationship between the use of the van and the ignition of the fire was *casual* at best, and in our view that link was not sufficient to bring the fire within the coverage afforded by defendant's policy. The scope of coverage afforded therein must end at some point, and such is the case in this litigation.

Plaintiffs place strong reliance upon the case of United States Fidelity & Guaranty Co. v. Burris, 240 S. 2d 408 (La. App. 1970). In that case, several buildings were damaged by a fire which was ignited when the insured was using an acetylene torch to cut away a metal shroud from a paint booth which the insured

---

[4] 12 Couch, Insurance 2d, § 45:56.

[5] Id.

[6] 12 Couch, Insurance 2d, § 45:57.

[7] Insurance Co. of North America v. Royal Indemnity Co. 429 F. 2d 1014, 1017.

[8] Schmidt v. Utilities Ins. Co. 353 Mo. 213, 182 S. W. 2d 181 (1944).

intended to load onto his truck for removal to a different building. The oxygen-acetylene tanks were on the truck when the fire started. The trial court granted the insurer a summary judgment holding that the fire did not arise out of the "use" of insured's truck. In reversing that part of the summary judgment, the court stated:

"* * * By looking to what part the automobile played in the entire scheme the courts can determine if there is coverage, and if so, how far it will be extended. Each case must depend on its facts according to the part the automobile played in the scheme." 240 S. 2d 409.

The court did not further articulate why it was of the opinion that the fire could have arisen from the use of the insured vehicle.

We do not believe that this decision is persuasive, primarily because the scope of inquiry in that case was limited to whether the summary judgment entered in favor of the insurer was proper. Moreover, we are most reluctant to place strong reliance upon a decision which did not more fully explore the nexus between the "use" of the insured vehicle and the ignition of the fire, the crucial question in this case.

■ Plaintiffs urge this court to apply the rule of adverse construction against defendant in this case. That rule requires that the policy terms at issue must be "ambiguous." While it is true that the term "arising out of the use" of the insured vehicle is broad in scope, we do not believe it to be ambiguous. That term simply cannot be applied to provide coverage in this case, and we so hold.

■ Plaintiffs contend that the findings of the trial court must be accorded great deference on appeal. However, in the instant case there was no dispute as to the facts. Rather, the question presented is one of law because it involves interpretation of the language of an insurance contract. See, Caspersen v. Webber, 298 Minn. 93, 213 N. W. 2d 327 (1973); Boedigheimer v. Taylor, 287 Minn. 323, 178 N. W. 2d 610 (1971). As such, this court may

determine whether the trial court properly interpreted and applied the law to the facts presented.[9]

Defendant argues that the Automobile Fleet Plan Endorsement, § 2 (b)(2), of the policy, clearly establishes that the policy did apply to losses arising from the use of welding equipment. That endorsement provides:

"(2)  the following described equipment shall be deemed an automobile *while towed by or carried on an automobile covered by this policy solely for purposes of transportation or while being operated solely for locomotion, but not otherwise:* if of the non-crawler type, any power crane or shovel, ditch or trench digger; and any air compressing, building or vacuum cleaning, spraying or *welding equipment* or well drilling machinery." (Italics supplied.)

Plaintiffs respond that this endorsement cannot be interpreted so as to restrict the coverage provided in the main policy, but rather it must be read so as to enlarge coverage.

At the very least, the endorsement provides evidence that the parties had not intended that welding equipment was covered in the original agreement. Moreover, an insurance contract must be read as a whole. Fuchs v. Cheeley, 285 Minn. 356, 173 N. W. 2d 358 (1969). The language of the above endorsement and the intent manifested thereby cannot be ignored.

In view of the fact that our holding is dispositive of this appeal, we do not deem it necessary to consider the other issues raised by the parties.

Reversed.

---

[9] See, e.g., Chicago, R. I. & P. R. Co. v. Air-O-Flex Equipment Co. 267 Minn. 387, 126 N. W. 2d 773 (1964).