**BENTON COUNTY AGRICULTURAL SOCIETY, Respondent,**

v.

**ST. PAUL SURPLUS LINES INSURANCE COMPANY, Appellant,**

**Leroy Varner, Respondent.**

**No. C5–85–269.**

Court of Appeals of Minnesota.

Aug. 6, 1985.

Gerald Von Korff, St. Cloud, for Benton County Agr. Soc., respondent.

Daniel J. Buivid, Jr., Kay Nord Hunt, Minneapolis, for appellant.

Frederick R. Jacobberger, St. Paul, for Leroy Varner, respondent.

Heard, considered and decided by NIERENGARTEN, P.J. and LANSING and RANDALL, JJ.

## OPINION

NIERENGARTEN, Judge.

St. Paul Surplus Lines Insurance Co. appeals from summary judgment entered in favor of respondent Benton County Agricultural Society holding that an insurance policy issued by St. Paul Surplus provided coverage for claims against Benton County made by Jeffery Corrigan. We reverse.

### FACTS

Corrigan sustained injuries while participating in a three-wheel racing event at the Benton County Fair. Benton County had an Owners', Landlords' and Tenants' Liability Insurance Policy with St. Paul Surplus. The "General Liability Hazards" schedule on the declarations page identified the hazard insured as "Fairs—outside—including Demolitions Derbys [sic], 3-Wheel Spectac-

ular & Tractor Pull." St. Paul Surplus denied coverage, relying on two endorsements. Endorsement No. 27572 (1–79), provides:

**Athletic Participants Exclusion:**

It is agreed that the insurance does not apply to bodily injury to any person while practicing for or participating in any contest or exhibition of an athletic or sports nature.

Endorsement No. 9146 (7–66), also known as Form G 309, provides:

It is agreed that the insurance applies with respect to the operation of any fair out of doors subject to the following additional exclusions:

The insurance does not apply

1. to bodily injury or property damage arising out of

(a) mechanically operated amusement devices owned or operated by the named insured,

(b) automobile or motorcycle racing or stunting,

(c) rodeos, or

2. to bodily injury to any person while practicing for or participating in any contest or exhibition of an athletic or sports nature sponsored by the named insured.

It is conceded the exclusionary language "motorcycle racing" includes three-wheel vehicle racing.

The trial court held there was coverage for the injuries sustained by Corrigan, concluding the language on the declaration page extended coverage to the three wheel spectacular "superseding the exclusions on the G 309 Exclusion page."

### ISSUE

Did the trial court err when it concluded the insurance policy issued by St. Paul Surplus provided coverage for the injuries sustained by a participant in a three wheel vehicle race?

### ANALYSIS

The interpretation and construction of an insurance contract is a matter of law. *Iowa Kemper Insurance Co. v.*

*Stone,* 269 N.W.2d 885, 886–87 (Minn.1978). An appellate court, therefore, may review "whether the trial court properly interpreted and applied the law to the facts presented." *State Farm Mutual Automobile Insurance Co. v. Budget Rent-A-Car Systems, Inc.,* 359 N.W.2d 673, 675–76 (Minn. Ct.App.1984); *see Associated Independent Dealers, Inc. v. Mutual Service Insurance Cos.,* 304 Minn. 179, 183–84, 229 N.W.2d 516, 519 (1975). An insurance policy must be read as a whole. *Id.* at 184, 229 N.W.2d at 520.

■ St. Paul Surplus argues the trial court failed to read the policy as a whole when it concluded the language contained in the hazard schedule superseded the specific endorsements contained in the policy. St. Paul Surplus claims the hazard schedule identifies the potential liability producing activities but does not enlarge the coverage under the terms of the policy itself.

Benton County contends Form G 309 does not exclude those events specifically included in the hazard schedule. We disagree.

The supreme court has described the purpose of a hazard schedule as follows:

[A] hazard schedule is nothing more than a list of the potentially liability-producing activities for which coverage is provided to the named insured. An assessment of the number and character of such activities aids the insurance company in establishing the proper total premium charge. Clearly, however, the hazard schedule does not expand the category of persons insured; such persons are specifically designated in a different section of the policy. Instead, a hazard schedule merely lists the risks *against which the persons insured are protected,* and also sets forth the premium charge associated with each such risk.

*Holm v. Mutual Service Casualty Insurance Co.,* 261 N.W.2d 598, 602 (Minn.1977) (emphasis in original). *Holm* specifically held that the purpose of the hazard schedule is to describe the risks insured under the policy. In the present case, the hazard schedule explicitly covers outside fairs, including demolition derbys, three-wheel spectacular and tractor pull.

The declarations page, which contains the hazard schedule, includes the following language:

The insurance afforded is only with respect to such of the following Coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such Coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

According to this language we must look to the rest of the policy to see if the hazard coverage is in any way defined or limited.

The language of the policy endorsements is clear. Endorsement No. 27572 explicitly excludes all "athletic participants." Likewise, Form G 309 excludes liability arising out of motorcycle racing and bodily injury to any participant in a sponsored sport or athletic event. The endorsements are consistent with the traditional function of this type of policy.

The traditional function of an Owners', Landlords' and Tenants' policy has been to afford protection against liability arising from the condition or use of the premises as distinguished from protection "against liability arising from the nature of the enterprise or activity conducted therein." 11 Couch on Insurance 2d § 44:379 (rev. ed. 1982); *see Monari v. Surfside Boat Club Inc.,* 469 F.2d 9, 11 (2nd Cir.1972). Here, the purpose of the policy is to protect Benton County against liability arising out of the condition of its land, bleachers and buildings used for purposes of an outside fair. This interpretation is consistent with the language employed in Exclusion G 309 which states "the insurance applies with respect to the operation of any *fair out of doors*" subject to certain limitations. (Emphasis added). The policy is not protection against liability arising from the activities to be conducted at a fair, which, in this case, may include a three-wheel spectacular, a demolition derby, or a tractor pull as identified on the hazard schedule.

The supreme court has also consistently held that "where provisions in the body of the policy conflict with an endorsement, the provision of the endorsement governs." *Dairyland Insurance Co. v. Implement Dealers Insurance Co.*, 294 Minn. 236, 245, 199 N.W.2d 806, 811 (1972); *see Horace Mann Insurance Co. v. Independent School District No. 656*, 355 N.W.2d 413, 418 (Minn.1984); *Wyatt v. Wyatt*, 239 Minn. 434, 437–38, 58 N.W.2d 873, 875–76 (1953). Under this rule, endorsement G 309 would govern and exclude coverage of the three-wheel spectacular. Any other construction would nullify the specific policy endorsements in question.

## DECISION

The trial court's conclusion that Form G 309 was superseded by the language in the hazard schedule was erroneous.

**Reversed.**