Gregory **LATTERELL,** as trustee for the heirs of Jared Travis Boom, decedent, Appellant,

v.

**PROGRESSIVE NORTHERN INSURANCE COMPANY,** Respondent,

and

AIG Insurance Company, Respondent.

No. A09–1138.

Supreme Court of Minnesota.

Aug. 31, 2011.

Michael A. Bryant, Nicole L. Bettendorf, Bradshaw & Bryant, PLLC, Waite Park, Minnesota, for appellant.

Curtis D. Ruwe, Michelle M. Carter, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota, for respondent Progressive Northern Insurance Company.

Michael M. Skram, Matthew M. Johnson, Johnson & Condon, P.A., Minneapolis, Minnesota, for respondent AIG Insurance Company.

## OPINION

STRAS, Justice.

Appellant Gregory Latterell, on behalf of his stepson Jared Boom's estate, sued respondents Progressive Northern Insurance Company and AIG Insurance Company to recover underinsured motorist (UIM) benefits following Boom's death from a motor vehicle accident. Progressive, the insurer of Boom's vehicle, denied Latterell's claim for UIM benefits because of a business-use exclusion in Boom's insurance policy. The district court granted summary judgment to both insurance companies, and the court of appeals affirmed. Because the business-use exclusion in Pro-gressive's policy is invalid under the Minnesota No–Fault Automobile Insurance Act ("No–Fault Act"), Minn.Stat. §§ 65B.41–.71 (2010), we reverse the district court's grant of summary judgment to Progressive.

## I.

The relevant facts in this case are undisputed. Jared Boom worked as a subcontractor delivering and picking up books. For completing his delivery route, Boom's employer paid him $148 per day in addition to a surcharge for gas. During one of Boom's deliveries to a library in Kerkhoven, Minnesota, Boom was killed when another vehicle collided with his 1998 Dodge Grand Caravan.

Gregory Latterell, Boom's stepfather and trustee for Boom's heirs, first made a claim against the other driver's insurer, which settled for the liability policy limit of $100,000. Latterell then sought to recover UIM benefits from the insurance policy with Progressive Northern Insurance Company that covered Boom's vehicle. Progressive denied the claim based on a business-use exclusion contained in Boom's policy. The policy exclusion states, in relevant part:

Coverage under this Part III [UIM coverage] will not apply:

1. to bodily injury sustained by any person while using or occupying:

a. a covered auto while being used to carry persons or property for compensation or a fee, including, but not limited to, pickup or delivery of magazines, newspapers, food, or any other products.

(Emphasis omitted.)

After Progressive denied coverage, Latterell sought UIM benefits from his own insurance policy with AIG Insurance Company. In limited circumstances, the AIG policy provided coverage for family

members residing with Latterell, the named insured on the AIG policy. Even though Boom resided with Latterell, AIG denied Latterell's claim for UIM benefits because of a policy exclusion for injuries sustained while occupying a vehicle owned by a resident relative but not insured under the AIG policy.

Latterell subsequently sued Progressive and AIG in Hennepin County District Court. All three parties moved for summary judgment. The district court granted summary judgment to Progressive and AIG, but denied Latterell's motion for summary judgment. The court of appeals affirmed, concluding that the business-use exclusion in the Progressive policy is enforceable under the No–Fault Act and unambiguously excludes UIM coverage under the specific circumstances of this case. *Latterell v. Progressive N. Ins. Co.*, No. A09–1138, 2010 WL 696747, at *2–3 (Minn. App. Mar. 2, 2010). The court further concluded that because Boom was the named insured on the Progressive policy covering the motor vehicle he occupied at the time of accident, Latterell could not recover UIM benefits under the AIG policy. *Id.* at *4 (citing Minn.Stat. § 65B.49, subd. 3a(5)). We granted Latterell's petition for review.

## II.

This case requires us to address two questions in order to resolve whether Latterell is entitled to UIM benefits under the Progressive policy. First, we must determine whether the district court and the court of appeals correctly interpreted the business-use exclusion in the Progressive policy. Second, we must decide whether the business-use exclusion, as properly interpreted, is enforceable under the No–Fault Act. We address each of these questions in turn.

## A.

■ The first question is whether the business-use exclusion unambiguously encompasses Boom's conduct in delivering and picking up library books as a subcontractor at the time of the accident. Interpretation of an insurance contract, including whether provisions in a policy are ambiguous, is a legal question subject to de novo review. *Dohney v. Allstate Ins. Co.*, 632 N.W.2d 598, 600 (Minn.2001); *Am. Commerce Ins. Brokers, Inc. v. Minn. Mut. Fire & Cas. Co.*, 551 N.W.2d 224, 227 (Minn.1996).

Progressive's business-use exclusion states in relevant part that UIM coverage is not available for bodily injury sustained "while using or occupying ... a covered auto while being used to carry persons or property for compensation or a fee, including, but not limited to, pickup or delivery of magazines, newspapers, food, or any other products." (Emphasis omitted.) Latterell contends that the phrase "for compensation or a fee" is ambiguous because it may refer to a per-trip charge, a daily charge for use of the car, or a fixed hourly wage.

■ Insurance policy provisions are ambiguous only when they are "reasonably subject to more than one interpretation." *Am. Commerce Ins. Brokers*, 551 N.W.2d at 227. We interpret unambiguous policy language "in accordance with its plain and ordinary meaning." *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 799 (Minn.2004). Here, the broadly worded business-use exclusion in the Progressive policy is unambiguous because it excluded UIM coverage for Boom's delivery and retrieval of books under *any* of the remuneration arrangements identified by Latterell, including the daily wage that Boom received for his services. The definition of the term "fee" is "compensation often in the form of a fixed charge for professional

service or for special and requested exercise of talent or of skill." *Websters Third New International Dictionary* 833 (2002); *see also Blacks Law Dictionary* 690 (9th ed.2009) (defining "fee" as "[a] charge for labor or services"); *The American Heritage Dictionary of the English Language* 647 (4th ed. 2009) ("A charge for professional services"). The term "compensation," by contrast, means "payment for value received or service rendered: remuneration." *Webster's Third New International Dictionary* 463 (2002); *see also Black's Law Dictionary* 322 (9th ed.2009) (defining "compensation" as "[r]emuneration and other benefits received in return for services rendered; esp., salary or wages"); *The American Heritage Dictionary of the English Language* 376 (4th ed. 2009) ("Something, such as money, given or received as payment or reparation, as for a service or loss.").

Boom's daily wage of $148, plus a gas surcharge, unambiguously constitutes "compensation" because it is "remuneration" or "payment for ... service[s] rendered" for the delivery and retrieval of library books. Moreover, Progressive's business-use exclusion uses the disjunctive "or" between the terms "compensation" and "fee," which means that using or occupying "a covered auto while being used to carry persons or property for" *either* compensation or a fee is excluded from UIM coverage under the Progressive policy. Therefore, even assuming the term "fee" is ambiguous or must be interpreted as including only a fixed charge for each delivery, *see Progressive Cas. Ins. Co. v. Metcalf,* 501 N.W.2d 690, 692 (Minn.App.1993), the phrase "compensation or a fee" is sufficiently broad to include Boom's daily wage, plus the surcharge he received for gas.

■ Latterell nonetheless argues that the phrase "for compensation or a fee" is ambiguous because the phrase is so broad that it could include nearly any remuneration arrangement between two parties, including the payment of money or "some [other] type of tangible or intangible benefit." Latterell's argument, however, mistakenly equates breadth with ambiguity; just because contractual language is broad does not mean it is ambiguous. To the contrary, we have recognized that broad meanings in insurance policies do not "necessarily create ambiguity." *Am. Commerce Ins. Brokers,* 551 N.W.2d at 228; *see also Associated Indep. Dealers, Inc. v. Mut. Serv. Ins. Cos.,* 304 Minn. 179, 183, 229 N.W.2d 516, 519 (1975) (concluding that a "broad" provision in an insurance contract was unambiguous). And we "must fastidiously guard against the invitation to create ambiguities where none exist." *Columbia Heights Motors, Inc. v. Allstate Ins. Co.,* 275 N.W.2d 32, 36 (Minn. 1979) (citation omitted) (internal quotation marks omitted).

Here, Progressive's business-use exclusion unambiguously excluded UIM coverage because Boom was transporting books for compensation in the form of a fixed daily wage.

### B.

■ Now that we have interpreted Progressive's business-use exclusion, the next question is whether the exclusion is enforceable under the No–Fault Act. The district court and the court of appeals upheld Progressive's policy exclusion, concluding that the No–Fault Act does not specifically prohibit excluding UIM coverage for the business use of a vehicle. We disagree.

■ It is true that "[p]arties to insurance contracts, as in other contracts, absent legal prohibition or restriction, are free to contract as they see fit, and the extent of liability of an insurer is governed by the contract they enter into." *Bobich*

*v. Oja,* 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). Moreover, insurance policy exclusions are " 'given the same consideration in determining' " coverage as other provisions in the policy. *Lobeck v. State Farm Mut. Auto. Ins. Co.,* 582 N.W.2d 246, 249 (Minn.1998) (quoting *Bobich,* 258 Minn. at 295, 104 N.W.2d at 24–25).

 Generally speaking, automobile insurance coverage falls into one of two categories: first-party coverage or third-party coverage. First-party coverage pays benefits to the insured, often regardless of the vehicle the insured was occupying at the time of a motor vehicle accident. *See Lobeck,* 582 N.W.2d at 250. In other words, first-party benefits "protect persons, not vehicles, and therefore the benefits of first-party coverage follow the insured person." *Id.* As we have noted, "[t]he No–Fault Act is primarily aimed at providing first-party benefits to the insured, thereby eliminating the need to prove liability before an injured party can recover medical or other expenses." *Id.* at 249. On the other hand, third-party coverage pays benefits to individuals other than the named insured. *Id.* at 250. One type of third-party automobile coverage is liability insurance, which "compensates a third party who is injured in an automobile accident for which the insured is liable." *Id.* Third-party coverage follows the vehicle, not the person who purchases the policy. *Id.; see also* Minn.Stat. § 65B.49, subd. 3(1) ("Each plan of reparation security shall also contain stated limits of liability ... with respect to each *vehicle* for which coverage is thereby granted" (emphasis added)).

 The validity of an exclusionary provision in an insurance policy may depend on whether the exclusion applies to first- or third-party coverage. That is because the No–Fault Act " 'leaves unaltered the basic framework of the law of liability

insurance,' " but imposes restrictions on the ability of insurers to exclude first-party benefits. *Lobeck,* 582 N.W.2d at 250 (quoting *Hilden v. Iowa Nat'l Mut. Ins. Co.,* 365 N.W.2d 765, 769 (Minn.1985)). Indeed, because the "No–Fault Act's primary purpose is to ensure the availability of first-party benefits," we are more likely to invalidate exclusions to first-party coverage than to third-party coverage. *Lobeck,* 582 N.W.2d at 250. As we have stated, the "distinction between third-party and first-party benefits is crucial when determining the validity of a policy exclusion." *Id.*

The primary question here is whether Progressive has to pay UIM benefits for the accident involving Boom even though Boom's insurance policy has a business-use exclusion that unambiguously applies to the circumstances of his motor vehicle accident. The No–Fault Act requires every automobile insurance policy issued in Minnesota to provide a minimum amount of UIM coverage. Minn.Stat. § 65B.49, subd. 3a(1) (requiring minimum UIM "limits of $25,000 because of injury to or the death of one person in any accident and $50,000 because of injury to or the death of two or more persons in any accident"). As a general matter, UIM coverage is triggered when a tortfeasor's liability coverage is insufficient to fully compensate the injured person for the actual damages sustained in an accident. *See* Minn.Stat. § 65B.43, subds. 17, 19 (defining "underinsured motor vehicle" and "underinsured motorist coverage"); *Dohney,* 632 N.W.2d at 601.

We have explained that UIM coverage constitutes first-party coverage because UIM benefits "compensate[ ] an insured under his own policy if he is legally entitled to recover damages from the owner or operator of an underinsured motor vehicle." *Lynch ex rel. Lynch v. Am. Family*

*Mut. Ins. Co.*, 626 N.W.2d 182, 188 (Minn. 2001). However, primary UIM coverage, unlike some other types of first-party coverage, follows the vehicle rather than the insured on the policy.[1] Under Minn.Stat. § 65B.49, subd. 3a(5), the injured occupants of a vehicle must initially seek UIM benefits from the insurer of the motor vehicle they occupied at the time of the accident. *Becker v. State Farm Mut. Auto. Ins. Co.*, 611 N.W.2d 7, 11 (Minn. 2000). Therefore, UIM coverage shares qualities of both first- and third-party coverage: UIM coverage can pay benefits to the insured when the insured is occupying his or her own motor vehicle at the time of an accident (like first-party coverage), but it also can pay benefits to other occupants of the vehicle who are not insureds under the policy (like third-party coverage). *See* Minn.Stat. § 65B.49, subd. 3a(5); *cf. McIntosh v. State Farm Mut. Auto. Ins. Co.*, 488 N.W.2d 476, 478 (Minn.1992) (stating that uninsured motorist coverage, which is similar to UIM coverage, is "[a]rguably ... not first party coverage" because it is more like substitute liability coverage than basic economic loss benefits). Despite the unique nature of UIM coverage, we have repeatedly and consistently treated UIM coverage as first-party coverage for purposes of the No–Fault Act. *See, e.g., Kelly v. State Farm Mut. Auto. Ins. Co.*, 666 N.W.2d 328, 330 (Minn.

2003); *Lynch,* 626 N.W.2d at 188; *Lobeck,* 582 N.W.2d at 249–50. We will continue to do so here: for purposes of determining whether Progressive's business-use exclusion is enforceable under the No–Fault Act, we will look to cases addressing policy exclusions to first-party rather than third-party coverage.[2]

One such case is *Meister v. Western National Mutual Insurance Co.*, 479 N.W.2d 372 (Minn.1992), in which we held that a business-use exclusion was unenforceable as applied to "additional" economic loss benefits. *Id.* at 379. Michael Meister suffered severe head injuries when he was thrown from the back of a pickup truck owned by Meister's employer, Gunflint Lodge. *Id.* at 373. The insurer of the pickup truck offered to pay Meister basic economic loss benefits for his injuries. *Id.* at 374. Meister also sought to recover additional economic loss benefits for medical expenses and income losses under a policy purchased by his father from Western National Mutual Insurance Company. *Id.* The Western National policy, however, explicitly excluded benefits for bodily injuries that occurred while a motor vehicle was "being used in the business of transporting persons or property." *Id.* Even though the No–Fault Act does not explicitly require every insurance policy to provide additional economic loss ben-

---

1. The Minnesota Legislature amended the No–Fault Act in 1985 by, among other things, adding subdivision 3a to section 65B.49. Act of June 27, 1985, ch. 10, § 68, 1985 Minn. Laws 1st Spec. Sess. 1781, 1840–41. We have explained that the 1985 amendment "reflect[s] a broad policy decision to tie ... [UIM] coverage to the particular vehicle involved in an accident." *Hanson v. Am. Family Mut. Ins. Co.*, 417 N.W.2d 94, 96 (Minn. 1987); *see also W. Bend Mut. Ins. Co. v. Allstate Ins. Co.*, 776 N.W.2d 693, 699 (Minn. 2009) ("In other words, after the 1985 amendment, primary UIM coverage follows the vehicle, rather than the person.").

2. The court of appeals therefore erred in relying on a case upholding a business-use exclusion to third-party liability coverage. *See Latterell,* 2010 WL 696747, at *2–3 (discussing *Ill. Farmers Ins. Co. v. Eull,* 594 N.W.2d 559 (Minn.App.1999)). Moreover, based on our differing treatment of exclusions to first-party and third-party coverage, we express no opinion about whether a similar business-use exclusion to third-party coverage would be enforceable.

efits, we invalidated the business-use exclusion in *Meister* because an insurer must provide the additional coverage "*if the insured chooses to purchase it.*" *Id.* at 379. Moreover, as we noted, "Meister's father paid an extra premium for additional coverage to protect the people covered under his policy." *Id.* As a result, we concluded that Western National could not deny first-party coverage based on an exclusion tied to the vehicle rather than the persons protected under the policy. *Id.*

The holding and rationale of *Meister* are equally applicable here. First, both *Meister* and this case involve similar, broad policy exclusions that apply when a vehicle is carrying persons or property for some business purpose. Second, like *Meister*, this case involves a policy exclusion applicable to first-party benefits. Third, al-

though *Meister* involved a different type of first-party coverage—additional economic loss benefits—the rationale underlying *Meister* is arguably stronger in the context of UIM benefits. To be sure, we recognized in *Meister* that additional economic loss benefits were required "in th[e] sense" that they must be *offered* with every automobile insurance policy. *Id.* But unlike additional economic loss benefits, which can be purchased at the option of a policyholder, the No–Fault Act explicitly provides that *every* automobile insurance policy issued in Minnesota *must* provide the minimum amount of UIM coverage set forth by statute. Minn.Stat. § 65B.49, subd. 3a(1).[3]

■ *Meister* is consistent with other cases from this court addressing exclusions to first-party coverage. Other than cases involving coverage conversion,[4] which in-

---

**3.** The dissent is no doubt correct that *Meister* involved additional economic loss benefits rather than UIM benefits. The dissent then proceeds to distinguish *Meister* on two grounds. First, the dissent states that additional economic loss benefits are governed by Minn.Stat. § 65B.47, subd. 7, rather than Minn.Stat. § 65B.49, subdivision 3a. The dissent's observation is interesting, but it fails to point to any disparate language between the two provisions that would compel a different result in this case than in *Meister*. In fact, the only statutory language relied on by the dissent in distinguishing *Meister* is the same language supporting our conclusion that *Meister*'s rationale is even more compelling here because UIM benefits are mandatory for every insurance policy issued in Minnesota. *Compare* Minn.Stat. § 65B.49, subd. 3a(1) (stating that UIM coverage, "at a minimum, *must* provide limits of $25,000 because of injury to or the death of one person in any accident and $50,000 because of injury to or the death of two or more persons in any accident" (emphasis added)), *with* Minn.Stat. § 65B.47, subd. 7 (providing that "[a]n insurer shall notify policyholders that they *may* elect to have two or more policies added together" (emphasis added)). Second, the dissent states that UIM benefits require a determination of fault by a third party, while additional eco-

nomic loss benefits are paid to an insured without regard to fault. But the dissent again fails to articulate why this distinction makes any difference for purposes of this case.

More fundamentally, the dissent fails to address the striking similarities between this case and *Meister:* both involve similarly worded business-use exclusions, first-party benefits, and coverage required by the No–Fault Act under the circumstances. In addition, the dissent makes no attempt to distinguish the cases in which we have invalidated insurance contract provisions excluding UIM benefits under the No–Fault Act. In each of these cases, we struck down exclusions to UIM coverage by employing reasoning consistent with *Meister*. *See Am. Nat'l Prop. & Cas. Co. v. Loren*, 597 N.W.2d 291, 293–95 (Minn. 1999) (invalidating a policy exclusion preventing recovery of UIM benefits when the insured was injured while occupying a motorcycle owned by a resident relative); *Malmin v. Minn. Mut. Fire & Cas. Co.*, 552 N.W.2d 723, 728 (Minn.1996) (invalidating a policy exclusion denying UIM benefits unless the insured first obtained written consent to sue a third party).

**4.** Coverage conversion arises when an individual attempts to convert inexpensive UIM coverage into additional liability coverage by

disputably is not present here, the parties cannot identify a single case from this court in which we have upheld an exclusion to first-party coverage, and our research reveals none. To the contrary, we have consistently invalidated policy exclusions involving first-party coverage—including UIM benefits—under the No–Fault Act. *See Am. Nat'l Prop. & Cas. Co. v. Loren,* 597 N.W.2d 291, 293–95 (Minn.1999) (invalidating a policy exclusion preventing recovery of UIM benefits when the insured was injured while occupying a motorcycle owned by a resident relative); *Iverson v. State Farm Mut. Auto. Ins. Co.,* 295 N.W.2d 573, 574 (Minn.1980) (invalidating a policy exclusion preventing recovery of basic economic loss benefits when the insured was injured while using an uninsured automobile); *see also Malmin v. Minn. Mut. Fire & Cas. Co.,* 552 N.W.2d 723, 728 (Minn.1996) (invalidating a policy exclusion denying UIM benefits unless the insured first obtained written consent to sue a third party); *Roering v. Grinnell Mut. Reinsurance Co.,* 444 N.W.2d 829, 833 (Minn.1989) (invalidating a policy exclusion denying UIM benefits if the insured was injured while occupying a vehicle owned by the insured or a resident relative, but was not insured under the specific policy).

### C.

The dissent argues that our holding in this case is not "anchor[ed]" to the language of Minn.Stat. § 65B.49, subd. 3a. But the dissent struggles to find an anchor

of its own because there is no relevant language that supports the dissent's interpretation. As the dissent implicitly concedes in its analysis, the No–Fault Act is silent as to whether an insurance policy may contain a business-use exclusion to UIM coverage. Thus, the dissent must rely on the *absence* of language in subdivision 3a to support its view. At most, the absence of language renders subdivision 3a ambiguous, requiring us to look at other related statutes, such as those covering economic loss benefits, to interpret subdivision 3a. *See Milner v. Farmers Ins. Exch.,* 748 N.W.2d 608, 617 (Minn.2008) (stating that "[i]n the absence of any plain language" covering the subject matter of the case, the court should look to "other related statutes for guidance").

Even so, to the extent subdivision 3a addresses exclusions to UIM coverage, it favors our approach here. Subdivision 3a states in relevant part: "Each [UIM] coverage, at a minimum, must provide limits of $25,000 because of injury to or the death of one person in any accident and $50,000 because of injury to or the death of two or more persons in any accident." Minn.Stat. § 65B.49, subd. 3a(1). An insurance policy containing a business-use exclusion like the one in this case arguably does not provide the UIM benefits *required* by statute in the circumstances covered by the policy exclusion. We need not decide, however, whether other policy exclusions to UIM coverage would be invalid under subdivision 3a because *Meister* and our other

trying to recover both third-party liability benefits and first-party UIM benefits from the same insurance policy (or multiple insurance policies that all list the tortfeasor as the insured). One example of coverage conversion is when a family member injured in an automobile accident tries to recover third-party liability benefits from an at-fault family member, and then recover first-party UIM benefits under the same policy to recoup the remain-

der of his or her damages. *See Lynch,* 626 N.W.2d at 183–84. An insurer can write and enforce a policy provision excluding UIM coverage in those circumstances because "allowing the UIM claim would result in the payment of additional benefits for injuries caused by the negligence of the insured tortfeasor, which is ... the 'essence of liability coverage.'" *Kelly,* 666 N.W.2d at 331 (quoting *Lynch,* 626 N.W.2d at 188).

cases addressing exclusions to first-party coverage support our conclusion that Progressive's business-use exclusion is unenforceable under the No–Fault Act.[5]

### III.

For the foregoing reasons, we conclude that Progressive's business-use exclusion is unenforceable under the No–Fault Act. Because the business-use exclusion is Progressive's sole argument for denying UIM benefits, we reverse the grant of summary judgment to Progressive, reverse the denial of Latterell's summary judgment motion as to Progressive, and remand with instructions to enter judgment in favor of Latterell against Progressive.[6]

Reversed in part and remanded.

Dissenting, DIETZEN, J.

DIETZEN, Justice (dissenting).

The majority concludes, and I agree, that the Progressive insurance policy's business-use exclusion unambiguously excludes underinsured motorist (UIM) coverage under the facts of this case. The question we must decide is whether the Minnesota No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 (2010) (No–Fault Act), prohibits a business-use exclusion to UIM coverage in Progres-sive's insurance policy. Because the plain language of the No–Fault Act, particularly section 65B.49, subdivision 3a, does not prohibit a business-use exclusion, I conclude that such an exclusion is proper and enforceable. The majority, however, fails to consider or interpret the language of the No–Fault Act. Rather, the majority skips over statutory construction and turns to inapplicable case law to support its conclusion that the business-use exclusion ought to be prohibited. Because the majority opinion does not rest on the plain language of the statute, I respectfully dissent.

### I.

The goal of all statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2010); *W. Bend Mut. Ins. Co. v. Allstate Ins. Co.*, 776 N.W.2d 693, 698 (Minn.2009). We construe the words of a statute according to their plain and ordinary meaning. *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). Specifically, "[w]hen the words of a law in their application to an existing situation are clear ..., the letter of the law should not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16; *accord Tur-*

---

**5.** The dissent's position is that the No–Fault Act permits "typical insurance policy exclusions" if the Act does not specifically prohibit them. Even assuming we could derive a list of "typical" insurance policy exclusions, nothing in the No–Fault Act specifically prohibits an insurer from excluding UIM benefits when an accident occurs at night, during rush hour, or even on weekdays. Therefore, the dissent's position is not only inconsistent with case law, it is breathtaking in its scope.

**6.** It is unnecessary for us to decide whether the district court erred in granting summary judgment to AIG because Latterell clearly asserted the UIM claim against AIG in the alternative to the claim against Progressive.

Latterell's complaint states that Boom's estate "is entitled to receive underinsured motorist benefits from the Defendant AIG Insurance Company as a resident relative if Jared Travis Boom is found not to be covered by the Progressive policy." Similarly, Latterell stated in his motion for summary judgment that "it seems clear that if it was found that there was no UIM coverage with Progressive, the estate should be able to turn to the next available UIM coverage which is with AIG." At oral argument, Latterell's attorney conceded that Boom's estate would not have a claim against AIG for UIM benefits if Progressive's policy covered Boom.

*ner v. Mut. Serv. Cas. Ins. Co.,* 675 N.W.2d 622, 625 (Minn.2004).

An exclusion in an insurance policy "is a limitation of liability or a carving out of certain types of loss to which the coverage or protection of the policy does not apply." 17 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 49:111 (4th ed.2000). Typical exclusions in automobile insurance policies include family-household exclusions, business-use exclusions, and fellow-employee exclusions. *Id.* § 49:112. The exclusion at issue here is a business-use exclusion.

The relevant portion of the No–Fault Act set forth in Minn.Stat. § 65B.49 is quite comprehensive. The statute contains provisions regarding insurance for basic economic loss benefits (subdivision 1), residual benefits insurance (subdivision 3), uninsured motorist (UM) and UIM coverage (subdivision 3a), rental vehicles (subdivision 5a), additional benefits and coverages (subdivision 7), and family or group family day care provider coverage (subdivision 9).

Subdivision 3a is the specific portion of the statute at issue in this case. It sets forth the required UM and UIM coverage for insurance policies in Minnesota. Subpart 1 provides:

> No plan of reparation security may be renewed, delivered or issued for delivery, or executed in this state with respect to any motor vehicle registered or principally garaged in this state unless separate uninsured and underinsured motorist coverages are provided therein. Each coverage, at a minimum, must provide limits of $25,000 because of injury to or the death of one person in any accident and $50,000 because of injury to or the death of two or more persons in any accident.

Minn.Stat. § 65B.49, subd. 3a(1). It is undisputed that the Progressive policy has UM and UIM coverage at the required policy limits mandated by subdivision 3a(1).

Subdivision 3a contains seven other subparts that describe who are required to provide UM and UIM coverage, and how benefits are coordinated between different types of coverage. For example, each owner of a vehicle "registered or principally garaged" in Minnesota is required to have UM and UIM coverage. *Id.,* subd. 3a(2). Moreover, no reparation obligor is required to provide UM and UIM coverage in excess of the applicable bodily liability limits. *Id.,* subd. 3a(3). Further, no recovery is permitted under UM and UIM coverage for basic economic loss benefits. *Id.,* subd. 3a(4). Subdivision 3a(5) provides that UM and UIM coverage follows the vehicle the injured person occupied, subject to certain limitations. *Id.,* subd. 3a(5). Subdivision 3a(6) provides that the limits of liability for UM and UIM for two or more vehicles may not be added together to determine the limit of coverage for any one person for one accident. *Id.,* subd. 3a(6). Further, UM and UIM coverage do not apply to bodily injury of an insured while occupying a motor vehicle owned by the insured except as provided in subpart 7, or while occupying a motorcycle as provided in subpart 8. *Id.,* subd. 3a(7), (8).

Applying section 65B.49, subdivision 3a, I conclude that the business-use exclusion of the Progressive insurance policy is not prohibited, and therefore is proper and enforceable. Specifically, subdivision 3a addresses the mandated policy limits, who is required to provide the UM and UIM coverage, and certain exceptions that relate to the No–Fault Act the Legislature determined should be included in every insurance policy. Subdivision 3a does not address typical insurance policy exclusions such as coverage conversion exclusions, *see*

*Lynch ex rel. Lynch v. Am. Family Mut. Ins. Co.,* 626 N.W.2d 182, 189–90 (Minn. 2001), family-member exclusions, *see Kelly v. State Farm Mut. Auto. Ins. Co.,* 666 N.W.2d 328, 330–31 (Minn.2003), geographic exclusions, *see Smith v. Ill. Farmers Ins. Co.,* 455 N.W.2d 499, 501–02 (Minn.App.1990), or exclusions for racing or speed contests or violations of the law, *see* 8A Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 121:91–:92 (2005). It is reasonable to conclude that the Legislature was guided by the general principles of insurance contracts, that the contract between the parties should govern and parties are free to limit coverage. *See Am. Nat'l Prop. & Cas. Co. v. Loren,* 597 N.W.2d 291, 292 (Minn.1999). Otherwise, all exclusions not expressly stated in the No–Fault Act would be prohibited. The potential consequence of such an interpretation is to prohibit exclusions that are typically included in insurance policies. Consequently, I would conclude that typical insurance policy exclusions, like a business-use exclusion, are permissible under section 65B.49, subdivision 3a. Thus, the Progressive policy's business-use exclusion is proper and enforceable.

## II.

Having concluded that section 65B.49, subdivision 3a, does not prohibit the business-use exclusion at issue in this case, it is not necessary to stray from the language of the statute. As noted, however, the majority skips over statutory construction, and relies on *Meister v. Western National Mutual Insurance Co.,* 479 N.W.2d 372 (Minn.1992), to support its conclusion. But *Meister* is easily distinguishable.

In *Meister,* we considered whether an insurance policy that contained a business-use exclusion was enforceable as a limit on optional additional economic loss benefits. *Id.* at 374. The plaintiff was injured in a fall from the back of a pickup truck owned by the plaintiff's employer. *Id.* at 373. In addition to basic economic loss benefits from the employer's insurer, the plaintiff filed a claim for additional economic loss benefits, including medical expenses and income losses, under an insurance policy purchased by the plaintiff's father. *Id.* at 374. This policy, however, excluded benefits for bodily injuries that occurred while a motor vehicle was "being used in the business of transporting persons or property." *Id.* We concluded that "the legislature mandated the availability of additional benefits without restriction" and therefore the insurer must provide the optional additional economic loss benefits coverage "if the insured chooses to purchase it." *Id.* at 378–79 (emphasis omitted).

*Meister* does not support the majority's opinion for at least two reasons. First, *Meister* did not interpret section 65B.49, subdivision 3a, the statute at issue in this case, and did not analyze UIM coverage and benefits under the No–Fault Act. Rather, *Meister* interpreted optional additional economic loss benefits, the subject of Minn.Stat. § 65B.47, subd. 7, which are not at issue in this case. Subdivision 7 states that "[a]n insurer shall notify policyholders that they may elect to have two or more policies added together." *Id.* The *Meister* court expansively read the language of subdivision 7 to mean that once the optional additional economic loss coverage with the extra premium was offered and accepted, no business-use exclusions were enforceable for those additional benefits. *See Meister,* 479 N.W.2d at 379. Section 65B.49, subdivision 3a, however, does not contain similar language, and therefore *Meister* is not applicable.

Second, the optional additional economic loss benefits discussed in *Meister* are significantly different from UIM benefits. Specifically, economic loss benefits apply

absent a determination of fault, and additional economic loss benefits supplement this coverage. Minn.Stat. § 65B.42(1). Optional additional economic loss benefits are part of the overall scheme to "provide prompt payment of specified basic economic loss benefits to victims of automobile accidents without regard to whose fault caused the accident." *Id.* UIM benefits under section 65B.49, subdivision 3a, however, are only applicable when fault has been assigned, and the tortfeasor's liability coverage is not sufficient to cover all damages. Minn.Stat. § 65B.43, subds. 17, 19 (defining "underinsured motor vehicle" and "underinsured motorist coverage"). Thus, UIM benefits serve to supplement insufficient liability coverage and are distinguishable from optional additional economic loss benefits that do not require a determination of fault.[1]

## IV.

The majority's analysis expands the conclusion in *Meister* beyond optional additional economic loss benefits to UIM benefits without any analysis of section 65B.49, subdivision 3a. Specifically, the majority offers no interpretation of subdivision 3a to anchor its opinion. Indeed, the majority scrupulously avoids interpreting the statute. The implicit conclusion of the majority, however, is that subdivision 3a does not address exclusions, and therefore exclusions are prohibited. The logical consequence of prohibiting business-use exclusions because they are not mentioned in subdivision 3a is to prohibit all typical insurance policy exclusions. This sweeping conclusion would result in the invalidation of typical exclusions included in insurance policies, such as family-use exclusions, geographic exclusions, coverage conversion exclusions, organized racing or speed contest exclusions, or even exclusions for violations of the law. In my view, the Legislature did not intend to prohibit typical exclusions in insurance policies in subdivision 3a. Rather, the plain language of subdivision 3a does not prohibit these exclusions. Had the Legislature intended to prohibit typical insurance policy exclusions, such as business-use exclusions, it could have easily stated that they were prohibited. It did not. Therefore, I conclude that this business-use exclusion is proper and enforceable.

---

1. The majority relies on the statement that optional additional economic loss benefits and UIM benefits are both "first-party benefits" to conclude that *Meister* is equally applicable to cases addressing both types of benefits. But UIM coverage is payable to both the insured and third parties who occupy the covered vehicle. Minn.Stat. § 65B.49, subd. 3a(5). Thus, UIM coverage is more properly characterized as a hybrid of both first- and third-party benefits. *See McIntosh v. State Farm Mut. Auto. Ins. Co.,* 488 N.W.2d 476, 478–79 (Minn.1992) (stating that uninsured motorist coverage, which is governed by the same section of the No–Fault Act as underin-sured motorist coverage, is not "true first party coverage" because it functions as substitute liability coverage). This difference between UIM and additional economic loss benefits means that *Meister* cannot be directly applied to the situation presented here absent additional analysis of the statutory language underlying both types of coverage.

The majority also attempts to apply *Meister* to this situation because of the "similarly worded" business-use exclusions. But the issue is the language of section 65B.49, subdivision 3a, not the language of the business-use exclusion.